DUFFIELD et al. v. MICHAELS et al.

(Circuit Court of Appeals, Fourth Circuit. July 9, 1900.)

No. 348.

1. MINING LEASE—FORFEITURE—CONSTRUCTION OF CONTRACT.

A lease of lands for oil and gas purposes provided that same should be void if a well was not completed on the premises by lessee within two months from the date thereof, unless the lessee should thereafter pay monthly to the lessor $10 for each month's delay in completing said well. It was further provided that, if operations upon the well were not commenced in 30 days from the date of the lease, $10 extra should be paid for the second month. Work on the well was not commenced for over a month after the date of the lease, nor complete within 2 months and 8 days. After the expiration of the second month, the lessee paid the lessor the sum of $10, and again, 12 days after the expiration of the third month, the lessor tendered a similar payment, which was refused. *Held*, that the first $10 payment by the lessee could not be claimed by the lessor as on account of the money to be paid extra for the second month, and that a lease made by the lessor to another party after the expiration of the third month, and when the well had not been completed, under the claim that the first lease had been forfeited for nonpayment of the sum agreed to be paid for delay, was void.

2. SAME—PERFORMANCE BY LESSEE.

The payments to be made "for each month's delay in completing said well" not being made payable in advance by the terms of the lease, the lessor was not entitled to claim a forfeiture of the lease five days after the close of the third month, because the well was not then completed, and the lessee had failed to make payment for delay for the fourth month.

3. SAME—WAIVER OF PERFORMANCE.

The lessor having permitted the lessee to locate a well under the lease, and himself constructed a dam to obtain water with which to drill it, sold and delivered wood for fuel to the contractor employed by the lessee to drill the well, and lodged and fed the men who were doing the work, after

three months from the date of the lease had expired, and down to the very day that he made a new lease to another party, thus inducing the lessee and those claiming under him to believe that he was satisfied with their efforts at development, and that it was not his intention to claim a forfeiture, he will not be permitted, in equity, to insist that the first lease was forfeited at the time the second was executed, even though grounds to declare a forfeiture existed.

Appeal from the Circuit Court of the United States for the District of West Virginia.

J. W. Lee and B. M. Ambler (John B. Chapman and A. M. Campbell, on the brief), for appellants.

John A. Howard and W. P. Hubbard, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

GOFF, Circuit Judge. The appellants filed their bill in equity in the court below, the object of which was to have declared void a lease for oil and gas purposes made by Lewis Virgin of a certain tract of land in Pleasants county, W. Va., to A. A. Michaels, dated June 21, 1898, and also to restrain the defendants from removing and selling the oil produced from a well that had been drilled on said land. The case was duly matured and came on to be heard, when the court below entered a decree in favor of the defendants, by which the relief asked for by the appellants (the plaintiffs below) was refused, and their bill dismissed. 97 Fed. 825. From that decree this appeal was prosecuted.

The facts necessary to be stated are as follows:

On March 16, 1898, Lewis Virgin, the owner of a tract of 92 acres of land situated in Pleasants county, W. Va., leased the same for oil and gas purposes to A. Learn; and he on the 23d of that month assigned said lease to C. C. Duffield, in trust for W. H. Roessle, C. C. Duffield, and himself. Said trustee subsequently sold certain interests in said lease to other parties, who were also plaintiffs below. The lessee was to deliver to the lessor one-eighth of all the petroleum produced from said land, and was to pay $200 per annum for each gas well from which gas was sold for consumption. Among other provisions in said contract were the following:

"This lease to be null and void, and no longer binding on either party, if a well is not completed on the premises within two months from this date, unless the lessee shall thereafter pay monthly to lessor ten dollars per month for each month's delay in completing said well. Each payment to extend the time for completion for one month, and no longer. A deposit to credit of lessor in Pleasants County Bank, St. Mary's, W. Va., by check. The said to be a good payment of any moneys on this lease. * * * If operations are not commenced in thirty days from this date, ten ($10.00) dollars extra to be paid for the second month. The well to be completed must be through the first Cow Run sand."

Duffield, as trustee, entered into negotiations with one H. E. Morris for the drilling of a well on said land; preparing, signing, and sending to him an agreement, by which, as trustee, he agreed to pay said Morris 80 cents per foot for the drilling of said well; he (Morris) to furnish all the tools, rig, boiler, engine, water, and fuel required for

said work. Duffield, as trustee, was to furnish the conductor and all the casing necessary for the well, and the labor to tube it, while Morris was to give one day to cleaning the well, should it be shot, and to plug the same as required by law if it was dry. It was set forth in the writing so signed by Duffield and sent to Morris that when the contract was completed all money should be due. Morris refused to sign it, and declined to do the work. On the 9th of June, 1898, he assigned, by writing of that date, all his interest in said contract to the defendant A. A. Michaels, who took said paper so assigned him and proceeded with the work. The rig was completed under his direction · on the 16th of June, 1898, the boiler was placed in position on the 17th, the drilling commenced on the 18th, and was continued until the 28th of that month, when, as the sand was drilled through, the work stopped. Under Michaels' directions the well was plugged and the tools removed on the 28th of June, 1898. In August, 1898, Michaels returned to the well, rebuilt the derrick, removed the plugs, had the well shot, and found that it was a good producer. After the drilling had been commenced, and during the progress of the same, Virgin, on the 21st of June, 1898, executed another lease, conveying the same · land to the said Michaels; reserving the same royalties to himself, and with conditions virtually the same. This second lease was made on the claim of Virgin that the contract of March 16th with Learn was forfeited. Michaels informed the appellants of the execution of this new lease; stating to them that he took it as an additional security to himself for the payment of the work he was doing, and offering to turn it over to them if they would refund the money he had paid for it, and make certain changes in the agreement made with Morris under which he was drilling. This the appellants declined to do, insisting that the lease to them was not forfeited, and declaring their willingness and ability to pay for the well when it was completed. On the evening of the 27th of June Michaels telegraphed Duffield as follows: "Well shut down top of sand. Come immediately, as want to get matters straightened up. Answer." That message was answered by Duffield on the morning of the 28th in these words: "Roessle leaves this evening, and will see you in the morning." When Roessle reached the locality of the well, on the 29th of June, the work had ceased, and Michaels had removed his machinery and tools from it.

The claim of the appellants rests on the lease of March 16, 1898, made by Virgin to Learn, which the appellees insist was forfeited for the failure to pay rental; and they claim that the lease of June 21, 1898, made by Virgin to Michaels, vests them with title to the property in controversy. The lease to Michaels was void unless the contract with Learn had been forfeited. Under the lease of March 16, 1898, the lessee had two months from that date in which to complete a well on the land described therein, and then such further time as he might secure by the payment of $10 per month for each month of delay. A well was not completed by May 16th, when the two months expired, but the lessee on the 24th of that month deposited a check for $10 on account of said rental in the Pleasants County Bank, which was duly paid, and received by Virgin. After his acceptance of that money, he was estopped from declaring a forfeiture on account of the

nonpayment of rent, at least, until after the 16th of June, 1898. The contention of the defendants below that the $10 so received by Virgin was on account of the money to be paid "extra" for the second month, because operations had not been commenced in 30 days from the date of the lease, is without merit, as the nonpayment of that sum was not ground for forfeiture, but the lessor could have proceeded to collect it in any proper manner. There was to be no forfeiture unless there was a failure to complete a well in two months, and then, also, a failure to pay a monthly rental of $10 thereafter. Two months from the date of the lease expired on the 16th day of May, 1898, and the one month delay expiring on the 16th of June, 1898, was paid for by the deposit made on the 24th of May. There was no requirement that the payment for monthly delay should be made in advance. The payment of $10 at any time before the 16th day of July, 1898, would have prevented a forfeiture because of the nonpayment of the sum required for the second month's delay. But on June 21st Virgin, after consultation with Michaels and his attorney, concluded that the lease to Learn was forfeited, and immediately executed another to said Michaels. After that, on June 28th, the lessee, Learn, deposited an additional check for $10 in the Pleasants County Bank for the payment of the sum due for the month commencing on the 16th day of July, 1898; but this sum Virgin refused to accept, as he had theretofore executed the second lease.

In this case the only claim for forfeiture of the lease to Learn was because of the nonpayment of the money due for the first month's delay after the expiration of two months from the date of the lease, and the testimony is clear that said money was both deposited by Learn and received by Virgin before it was really due. If the insistence now made for Virgin is correct (that the $10 due for the first month's delay was payable with the beginning of that month, and that payment received was on account of the extra to be paid for the second month's delay, thereby causing ground for forfeiture), then, so far as the appellants are concerned, the answer is that Virgin, by his own conduct, words, and action, misled and deceived them. He permitted the well to be located, he constructed a dam to obtain water with which to drill it, he sold and delivered to the contractor wood for fuel, and he lodged and fed the men who were doing the work; and all this not only after the expiration of two months from the date of the lease, but after three months from that date had expired,—in fact, down to the date of the lease to Michaels. Under the facts of this case, it would be unconscionable to permit Virgin on June 21, 1898, to declare a forfeiture of the lease to Learn, even had grounds for the same existed prior to that date; for he had induced the lessee and those claiming under him to believe that he was satisfied with their efforts at development, and that it was not his intention to claim a forfeiture. Hukill v. Myers, 36 W. Va. 639, 15 S. E. 151; Gas Co. v. De Witt, 130 Pa. St. 254, 18 Atl. 724, 5 L. R. A. 731; Thompson v. Christie, 138 Pa. St. 249, 20 Atl. 934, 11 L. R. A. 236. We are forced to the conclusion that Virgin, for reasons well known to himself, to Michaels, and likely to others, concluded suddenly, when the drilling of the well was near completion, to declare a forfeiture of the lease

to Learn, and to endeavor to vest the title to the oil and gas in Michaels, subject to his royalties. It is certainly true that for some reason the lessor of Learn and the contractor of his assignee, without notice to the parties in interest, and unexpectedly to them, changed their plans and their methods of procedure. Virgin, who had theretofore freely acquiesced in all that the appellants had done in connection with the drilling of the well, without notice to them and seemingly without cause, actively opposed and repudiated them; and Michaels, who had gone upon the land as their representative, who had endeavored to carry out the provisions of the arrangement first made with Morris, from whom he held its assignment, who had used the material provided by the appellants, and who had furnished the rig and tools as stipulated for, without warning disavows the terms of his contract, admits the weakness of the appellants' title, and secures from their lessor the property they had placed him in possession of. The statement made by Michaels at the time he took the lease from Virgin (in substance, that he so acted in order to obtain additional security for the money that would be due him on the completion of the well) is at least weakened by his subsequent conduct in hurriedly closing the well before it was completed, shot, and measured, and in not calling on the appellants for the sum due him for drilling the well, as he would have done had he been acting in good faith. Likely some light can be thrown on the reasons that so actuated them, when we recall that the testimony shows that Virgin admitted after the well was plugged, and before it was opened in August following, that he had claimed the forfeiture of the lease to Learn because Michaels insisted that he should, and threatened to move his rig and tools unless he did, thereby stopping the work; that they both admitted that oil had been found, and that in due time the rig would be brought back and the well opened up; that Michaels admitted that he was present and running the screw when the oil was drilled into during the night of June 27th, and that the fluid "showed up over the tools," and that then he had it plugged; that the drillers of the well, the men who handled the tools, admitted that oil was found in the well the night preceding the day it was plugged and abandoned; that all of the defendants were fully advised of the existence of the lease to Learn, although they claim under the lease to Michaels, and that after they purchased their interests of Michaels he still telegraphed Duffield to come on and close matters up, thereby recognizing his claim to the property; and also that the lease is a very valuable one now, as it also was at the time it was abandoned. It is clear that Michaels concealed from the appellants the fact that oil had been found in the well he drilled for them. They were entitled to all the information he had on that subject, but they were misinformed,—in fact, advised by him that it was a dry hole. It is also clear that it was the intention of Virgin and Michaels, at the time the well was plugged and abandoned, to not only deceive the appellants and deprive them of their property, but then to return to it, reopen and further develop it. Such conduct cannot have the approval of honest men, and must not have the sanction of a court of equity. There is error in the decree appealed from, and the same will be reversed, the cause being remanded with directions to the court below

to proceed further with the same in the manner indicated by this opinion. The lease made by Virgin to Michaels, dated June 21, 1898, is fraudulent and void. The lease made by said Virgin to Learn, dated March 16, 1898, is valid and in full force. Reversed.