## FRANK OIL CO. v. BELLEVIEW GAS & OIL CO. *et al.*

No. 929.     Opinion Filed November 14, 1911.

(119 Pac. 260.)

1. **MINES AND MINERALS—Contracts—Oil and Gas—Construction and Operation.** Oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant not of the oil that is in the ground, but of such a part as the grantee may find, and passes nothing except the right to explore for the same under the terms of such contract.

2. **MINES AND MINERALS—Oil and Gas Lease—Construction and Operation—Forfeiture.** Where a party leases a tract of land for the purpose of mining and operating for oil and gas, the lessee contracting to deliver to the pipe line with which such well or wells may connect one-eighth of all oil saved from said premises, and to pay $150 each year for the product of each gas well while the same is being used off the premises, if oil and gas are found on said premises, also paying cash in hand the sum of $200 and agreeing to commence within 30 days from the date of said lease a well on an adjoining tract of land belonging to one Gibson, and in which the lessor had no direct interest, and the lease containing the following provision:

"If no well is commenced on said premises within one year from this date, then this grant shall become null and void, unless second party shall pay to the first party eighty ($80.00) dollars for each year thereafter such completion is delayed, said rental to be paid quarterly in advance. Party of the second part further agrees to protect the lines of the land above described by immediately

offsetting all wells drilled within 150 feet of said land, unavoidable delays excepted. It is further provided that this grant shall become null and void unless a well is commenced within thirty days from the date hereof on the following land belonging to Benjamin L. Gibson. * * *''

—Held, that this provision did not bind the lessee to pay any rent for the land or for delay in commencing to operate for oil and gas, ·said grant or lease amounting to an option, preventing the lessor, after receiving the consideration for the first year, from leasing to another during such time, and after receiving a quarterly payment, from leasing to another until such delay period of a quarter had expired, the lessee having the option, by continuing to pay such quarterly payments, to continually renew such option by such succeeding payments, the word ''year'' being used merely as a basis to fix the amount of the quarterly payments.

(a)   A gas and oil lease giving the lessee the option to pay a certain sum, and thus extend the lease, is operative against the lessor during such extension only upon the payment of such sum; contract rights being correlative and mutual.

(b)   Where the lessee had abandoned his lease by nonpayment of quarterly payments of rent or delay money, as stipulated therein, and such lease or contract having been declared forfeited by the lessor, the rights of the lessee thereby terminated.

3.   MINES AND MINERALS—Oil and Gas Lease—Construction Favoring Lessor. A different rule of construction obtains as to oil and gas leases from that applied to ordinary leases or to other mining leases. Owing to the peculiar nature of the mineral, and the danger of loss to the owner from drainage by surrounding wells, such leases are construed most strongly against the lessee and in favor of the lessor.

4.   CONTRACTS — Optional Contracts — Construction. When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound.

5.   CONTRACTS—Installments—Time of Payment—Waiver—Estoppel._ The contract providing for the payment of the sum of $20 quarterly in advance, the check for the first payment was mailed by the lessee to the lessor on the date the payment was to be made, and, being received by the lessor on the next day, it was accepted by him. The check for the second payment was mailed by the lessee to the lessor four days before the date ·of payment, and, being received by him prior to said date, was accepted. The third quarterly payment was not mailed to the lessor by the lessee until five days after the date provided for payment; the lessor having three days after the date of payment declared the lease forfeited on the ground of nonpayment. The check was received by the lessor six days after the date of payment and returned by him. Held, that the accepting of the first payment one day after the date of payment did not estop the lessor from declaring a forfeiture·for nonpayment, or operate as a waiver to

insist on the conditions of the contract; the lessee obviously not so construing it as an estoppel or waiver, as he sent the second payment four days before the date required, thereby indicating a recognition of the binding force of all the terms of the contract.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County; John Caruthers, Judge.*

Action by the Belleview Gas & Oil Company and others against the Frank Oil Company.   Judgment for plaintiffs, and defendant brings error.   Affirmed.

*West, Mellette & Jones,* for plaintiff in error.

*Geo. S. Ramsey, J. C. Stone, Thos. H. Owen,* and *C. L. Thomas,* for defendants in error.

WILLIAMS, J.   On the 15th day of October, 1906, the defendants in error, Elmer M. Lowe and Mollie E. Lowe, executed an oil and gas lease to the plaintiff in error upon a certain 80 acres of land allotted to Elmer M. Lowe, as a member of the Creek Tribe.   Said contract is *in haec verba*:

"In consideration of the sum of one and no-100 dollars and the covenants and agreements hereinafter contained, Elmer M. Lowe, and Mollie E. Lowe, his wife, of Mounds, Indian Teritory, first party, hereby grant unto the Frank Oil Company of Independence, Kansas, second party, its successors or assigns, all the oil and gas in and under the following described premises, together with the exclusive right to enter thereon for the purpose of drilling or operating for oil, gas or water, to erect, maintain, and remove all structures, pipe lines and machinery necessary for the production, transportation and storage of oil, gas or water, namely:   A lot of land situated in Creek Nation, Western District of Ind. Ter. bounded and described as follows:   The west half ($\frac{1}{2}$) of the southwest quarter ($\frac{1}{4}$) of section twenty-nine (29), township sixteen (16) north, range twelve (12) east of the Indian base and meridian containing eighty (80) acres more or less, according to the government survey thereof.   Should oil be found in paying quantities on the premises second party agrees to deliver to the first party in the pipe line with which he may connect the well or wells, the one-eighth (1-8) part of all the oil saved from said

premises. If gas only is found, second party agrees to pay one hundred and fifty ($150.00) dollars each year for the product of each well while the same is being used off the premises, and first party shall have gas free of expense to light and heat the dwellings on the premises. The second party shall have the right to use sufficient gas, oil or water to run all machinery used by it in carrying on its operations on said premises, and the right to remove all its property at any time. If no well is commenced on said premises within one year from this date, then this grant shall become null and void unless second party shall pay to the first party eighty ($80.00) dollars for each year thereafter such completion is delayed, said rental to be paid quarterly in advance. Party of the second part further agrees to protect the lines of the land above described by immediately offsetting all wells drilled within 150 feet of said land, unavoidable delays excepted. It is further provided, that this grant shall become null and void unless a well is commenced within thirty days from the date hereof on the following land belonging to Benjamin L. Gibson: The west half (½) and the southeast quarter (¼) of the northeast quarter (¼) of section thirty (30), township sixteen (16) north, range twelve (12) east, in the Ind. Ter. All rentals and all gas royalties mentioned herein shall be payable to the first party personally or deposited to his credit in the Bank of Mounds, of Mounds, I. T. In witness whereof, the parties have hereunto set their hands this 15th day of October, A. D. 1906.

> ELMER M. LOWE.
> MOLLIE E. LOWE.
> THE FRANK OIL COMPANY,
> By F. B. UFER, President.
> [Seal]    By WALTER M. LITCHFIELD, Secy."

The well on the Gibson tract was commenced within 30 days; but no well was commenced on the leased premises within one year from said date, nor had possession been taken thereof prior to the time of the alleged forfeiture. It becomes essential, under the facts stated, to determine the meaning of the provision, "unless second party shall pay to the first party eighty ($80.00) dollars for each year thereafter such completion is delayed, said rental to be paid quarterly in advance."

This contract having been entered into prior to the erection of

the state, section 1118 (section 876, Statutes Okla. Ter. 1890), Compiled Laws of Oklahoma, 1909, which provides, "Time is never considered as of the essence of a contract, unless by its terms expressly so provided," has no application in the construction of this lease, as certain statutes of Arkansas, as they appeared in Mansfield's Digest of 1884, were at that time in force in Indian Territory. Act of Congress, May 2, 1890, 26 U. S. Statutes at Large, § 31, c. 182, p. 94. Under the controlling decisions in Arkansas, the forfeiture in the language of this lease was permissible. *Williams v. Green,* 14 Ark. 315; *Gann v. Ball,* 26 Okla. 26, 110 Pac. 1067.

It is insisted by counsel for plaintiff in error that:

"A lease for no definite term, with an annual rental, which is payable quarterly or monthly, is a lease from year to year. The fact that rent is payable monthly does not make it any the less a yearly holding." *Ridgley v. Stillwell,* 25 Mo. 570; *Heck v. Borda* (Pa.) 6 Atl. 392; *Schneider v. Lord,* 62 Mich. 141, 28 N. W. 773; *Bank v. Merrill,* 69 Wis. 501, 34 N. W. 514.

This seems to be the general rule. But the question here arises as to whether this contract is not merely an option to exploit for gas and oil.

In *Kolachny v. Galbreath et al.,* 26 Okla. 772, 110 Pac. 902, it was held that:

"Oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil that is in the ground, but of such a part as the grantees may find, and passes nothing that can be the subject of an ejectment or other real action."

And that:

"Ejectment will not lie to recover possession of the land covered by such lease against the lessor or his grantee when the lessee has never had possession under said lease."

In addition to the authorities cited in support of that conclusion, attention is called to *Backer v. Penn Lubricating Co.,* decided by the United States Circuit Court of Appeals, for the Sixth Circuit, June 18, 1908 (162 Fed. 627, 89 C. C. A. 419), the opinion

being written by Knappen, District Judge, concurred in by Lurton and Richards, Circuit Judges, wherein it is said:

"The law seems to be settled that, under a lease, of the nature here in question, title to the oil in place is not in the lessee."

The lease, under these decisions, does not have the effect of placing the title of the oil and gas that is under the surface of the land in controversy in the lessee, but to grant to the lessee the privilege of exploiting for the oil and gas.

In *Ohio Oil Company et al. v. Detamore,* 165 Ind. 243, 73 N. E. 906, paragraph 5 of the syllabus is as follows:

"A gas and oil lease, giving defendant, in consideration of $120, all of the oil and gas under certain land, with the right to explore, and in case no well should be completed within six months the lease to be void, unless defendant should pay $120, in which event defendant should have another six months, said lease being subject to continual renewal by succeeding payments, and which lease contains no promise by defendant to do anything, amounts to a six months option preventing lessor, after receiving the consideration, from leasing to another during such time."

The lease in the case at bar does not bind the lessee to do anything.

At page 248 of 165 Ind., at page 908 of 73 N. E., in the case of *Ohio Oil Company et al. v. Detamore, supra,* it is said:

"The contract before us belongs to a rare type. It contains no express covenant to be performed by the company. It contains no promise of the company that it will ever drill a well; no promise that it will renew the term of six months by payment in advance of $120, called 'rent.' The sum total of the company's unconditional agreement is that, if it failed to do one thing or the other—that is, if it failed for six months to complete a well, or advance $120 for another term—the contract should be at an end. This case is radically unlike the cases in *Gadbury v. Ohio, etc., Gas Co.* (1904) 162 Ind. 9 (67 N. E. 259), 62 L. R. A. 895, *Hancock v. Diamond Plate Glass Co.* (1904) 162 Ind. 146 (70 N. E. 149), and *Consumers' Gas Trust Co. v. Littler* (1904) 162 Ind. 320 (70 N. E. 363), with respect to the covenants of the lessee and termination of the contract. In the case of *Gadbury v. Ohio, etc., Gas Co., supra,* it was stipulated that, in case no well was completed within 40 days from the date of the contract, the lease should be void, unless the company should pay the lessors $1 per

day, from the time completion was delayed beyond 40 days. There was no delay beyond 40 days, and payment by the company according to the contract. In the case of *Hancock v. Diamond Plate Glass Co., supra,* no time was fixed for the commencement or completion of a well, and the contract was 'deemed' to commence from its date, and to terminate whenever natural gas ceased to be used generally for manufacturing purposes. In the case of *Consumers' Gas Trust Co. v. Littler, supra,* no time was fixed for the beginning of operations, or for the completion of a well, but a covenant by the company that it would pay $40 each year until gas was found in paying quantities, or until it was discovered that it did not exist. In this, as in other contracts of its class, the manifest purpose of the parties was exploration, and the mining of oil and gas. But here, to say the most of it, the grant is inchoate, and not absolute. It purports upon its face to grant all the oil and gas under the land, but in effect provides that in consideration of $120 the grantee shall have six months in which to decide whether it will accept the grant by entering into possession and beginning the work of exploration. Viewed from end to end, the contract amounts to nothing more or less than a six months' option, with right of renewal, based upon a valid consideration, whereby the grantor bound himself not to lease the premises to another, and to give the grantee that length of time to consider and determine whether it would undertake the development of the land upon the terms named. If the grantee had decided in the affirmative, and had entered upon the land and proceeded with the execution of the contract and completed a well within the option period, then acceptance would have been complete, and the grant effective. But by deciding in the negative that the prospect would not justify the expense, or by entering and drilling an unsuccessful well and then abandoning the enterprise and removing belongings from the premises within the paid period, without renewal, the contract was fulfilled and exhausted by an exercise of the option not to develop. Another test: The rent, or option money, was paid, in accordance with the contract, to August, 1897, and included the six months ending at that time. Suppose, as the fact was, that thereafter for four years the company did not drill a well, make a payment, or have possession, and that appellee had at that time brought an action to recover back rent, or option money; could it be said, under the contract, in such a case, that *non assumpsit* would not have been a complete answer? Could not the appellant, Ohio Oil Company, have successfully said to the appellee:      'I did not promise to pay

you money?' And it is certain that, if said appellant has a right to enter after the expiration of the paid period, it was liable for the rent. Contractual rights and obligations are correlative."

In *Hancock et al. v. Diamond Plate Glass Co. et al.,* 162 Ind. 146, 70 N. E. 149, it is said:

"Contract for exploring for natural gas. Suit to recover stipulated sum for delay in putting down a well. On June 18, 1891, appellants and appellees, Diamond Plate Glass Company, entered into a written contract whereby appellants 'granted and contracted' to said appellee and its assigns 20 feet square of a certain described tract of 40 acres, to be located by mutual agreement, for the purpose and with the exclusive right of putting down a gas well thereon with the right of ingress and egress, and to lay pipe and conduct gas therefrom. As a consideration for the grant the gas company agreed to deliver to appellants, in the highway nearest their dwelling house on said 40 acres, free of charge during the continuance of the contract, whatever amount of natural gas was necessary for domestic use in said dwelling, and in addition thereto to pay appellants on September 1st of each year $100 for each producing gas well drilled on the premises, and until the company should put down a gas well on said premises the company agreed to pay appellants on September 1st of each year $20 at the office of the company, in Kokomo. Appellant on their part further 'covenanted and agreed' for themselves, their heirs, executors, and assigns, 'not to drill or suffer or permit others to drill, or put down, any other gas well, or wells, on any part of said entire 40-acre tract of land during the continuance of this contract.' It is further covenanted that 'this contract shall be deemed to commence at and run from the date of signing hereof, and shall be deemed to have terminated whenever natural gas ceases to be used generally for manufacturing purposes, or whenever the second party (the gas company), or their assigns, shall fail to pay or tender the rental price herein agreed upon within 60 days of the date of its becoming due. And in the event of the termination hereof, for any cause, all rights and liabilities hereunder shall cease and terminate.' * * * We are unable to see how the principles pertaining to the relation of landlord and tenant are applicable to such a contract as the one before us, either where possession has or has not been taken under the contract. It seems to have been held in *Diamond Plate Glass Co. v. Curless,* 22 Ind. App. 346 (52 N. E. 782), and *Diamond Plate Glass Co. v. Echelbarger,* 24 Ind. App. 124 (55 N. E. 233), that

similar instruments, granting the right to explore for and remove gas and oil for an indefinite period, are, in effect, leases creating tenancies from year to year, under section 7089, Burns 1901, which may be terminated by the tenant at the end of any year, without notice. But we cannot accept this view as correct. While a contract providing for an entry and removal of gas or oil from the premises is, perhaps, more than license, we are unable to believe that it constitutes such a tenancy as is contemplated by sections 7089, 7090, Burns 1901. It must be agreed that such a contract is equally binding on the parties to it. Suppose, for instance, that, under such a contract as this one, the operator shall enter and drill in a well which yields a much greater volume of gas, and is therefore much more valuable than was anticipated by the landowner when he made the bargain; will any one contend that the latter may avoid his contract and eject the operator by three months notice to quit before the end of the first year, under section 7090, *supra?* And yet this is precisely what the doctrine leads to. There appears from the complaint no good reason why the contract should not be enforced against the appellees."

In *New American Oil & Mining Co. et al. v. Troyer et al.,* 166 Ind. 402, 77 N. E. 739, it is said:

"Our statute relating to landlord and tenant rests upon the same foundation, that is, within the meaning of the statute upon the execution of a lease, it is implied that the lessor parts with, and the lessee acquires, some vested right in a fixed and certain property interest in the demised premises; such as the right to possess and use the land or tenements, to till the soil and carry away the crops, to enter and take gravel, stone, ore, coal, and other fixed substances under the surface, of which the earth and estate are composed. *Heywood v. Fulmer,* 158 Ind. 658, 32 N. E. 574, 18 L. R. A. 491. In this class of leases, whatever title or right is acquired under the lease becomes vested upon the execution of the contract. It is different with contracts relating to the prospecting for gas or oil, and, if successful, the mining thereof. It cannot be claimed that the one we are considering belongs to any other class. In addition to the stipulation above quoted, and upon the strength of which it is sought to distinguish the contract, another very characteristic provision is found in the body of the instrument, as follows: 'Should second party (company) refuse to pay such rental when due, such refusal shall be construed by both parties hereto as the act of the second party for the purpose of surrendering the rights hereby granted and this

instrument, in default of the rental, shall be null and void without further notice to second party.' The peculiar wandering character of gas and oil precludes ownership in their natural state, and hence they are not subjects of sale and conveyance until they have been reduced to possession and placed under control by being diverted from their natural paths into artificial receptacles. In such cases the real subject of the contract is the mining of the gas, or oil, that may be found, on the terms specified. The preliminary exploring is a mere incident that goes for nothing if unsuc-cessful, and unless oil or gas is found in paying quantities then there is and was not at the inception of the contract anything to which it could attach. So the title in such contract is at least inchoate until the result of the drilling is ascertained. And if barren territory is developed then there is no lease, no continuing contract, no conveyance of title, because nothing to pass under the agreement. Added to this peculiarity is the custom of making such contracts greatly in advance of the demand for the product, the impracticability of drilling until lines of transportation approach within reasonable reach, the delays in the beginning of operations, secured by the payment of a small sum, called rent, sometimes justifiable, and sometimes unreasonable, and, merely, for speculative purposes, the possibility, and occasional practice of extracting the fluids from under lands through wells on the premises of another, the uncertainty of the discovery, the large profits sometimes realized, the heavy expense of drilling the test well, the total loss of labor and expense in case of failure—these and other like considerations have led courts, long before the making of the contract involved in this suit, to place oil and gas contracts, on account of the 'known characteristics of the business,' in a class of their own. *Gadbury v. Ohio, etc., Gas Co..,* 162 Ind. 9, 13, 67 N. E. 259, 62 L. R. A. 895; *McKnight v. Natural Gas Co.,* 146 Pa. 185, 23 Atl. 164, 28 Am. St. Rep. 790. Such contracts are not ordinary leases nor within the purview of our statute, concerning the relation of landlord and tenant. *Hancock v. Diamond Plate Glass Co.,* 162 Ind. 146, 153, 70 N. E. 149."

*Dill v. Fraze,* 169 Ind. 53, 79 N. E. 971, was an action to cancel a certain gas and oil contract. We quote from the opinion as follows:

"The contract which is set forth in the complaint states that, in consideration of $1, Charles F. Dill and wife, described as the first party, have granted unto Emmett Fraze, described as the second party, all the oil and gas under a certain described 40 acres

of land, 'for the purpose of drilling and operating for oil and gas,' for and during the term of five years from date, and as long as oil and gas can be found on said real estate in paying quantities or the rental is paid thereon as provided in the contract. The provisions as to royalties are then set out, and there follows this language: 'In case no well is completed within sixty days and number 2 well in sixty days thereafter from this date, then this grant shall become null and void unless second party shall thereafter pay at the rate of forty dollars for each year such commencement is delayed. A deposit to the credit of the first party in Merchants' Bank, Muncie, Ind., will be good and sufficient payment for any money falling due on this grant. First party has the right to locate roads to and from places of operation, and locate first well; if oil is found in paying quantities a well shall be drilled each thirty days thereafter until four wells are drilled or as many more as the party of the second part see fit to drill and further agree to leave a water well. The second party shall have * * * the right to remove all its property at any time, and may cancel and annul this contract or any undrilled portion thereof at any time upon payment of one dollar to said first party and releasing the same of record.' The lease was executed May 26, 1903, and this action was commenced December 31, 1903. It is alleged in the complaint that operations have not been commenced to drill a well on the land, and that no sum whatever has been paid or deposited for the delay. The complaint further alleges that the recited consideration of $1 for the execution of the agreement was not in fact paid. There are also charges that the defendants have never taken possession, but have abandoned the same. Separate paragraphs of answer were filed by the appellee oil companies, each charging, in substance, that it was the assignee of said contract for a valuable consideration, and had taken the same without knowledge that the original consideration of $1 for the execution of said contract had not been paid; that it proposed to enter upon said land to prosecute the drilling and operation of gas and oil wells in the spring of 1904; that, while it admitted that the sum fixed as the price of delay had not been paid, yet it had in good faith construed said contract as not requiring said payment to be made in advance, and it offered to pay the annual rental should the court hold that it was due. A demurrer was addressed to these paragraphs, but was overruled, and, upon the completion of the issues, there was a trial, which resulted in a finding and judgment for appellees. No question is made by counsel for the latter concerning the sufficiency of the complaint, except in so far as it pre-

sents the question whether the rent was payable in advance.
* * * The agreement contains an express provision for a for-
feiture if a well is not completed within 60 days, unless the second
party thereafter pays at the rate of $40 per year for each year
such completion is delayed. The unit of payment was $40.
* * * The situation of appellant must be considered. There
was no express agreement on the part of the operator that he
would even explore for gas or oil; on the contrary, he had re-
served the right at any time, upon the payment of the nominal
consideration of $1, to cancel and annul the contract. He had not
agreed that he would pay any sum in the nature of rent. *Ohio
Oil Co. v. Detamore, supra; Van Etten v. Kelley,* 66 Ohio St. 605,
64 N. E. 560. The contract was not a lease (*Hancock v. Dia-
mond Plate Glass Co.,* 162 Ind. 146, 70 N. E. 149; *New American,
etc., Co. v. Troyer* [166 Ind. 402], 77 N. E. 739), and as the re-
lation of landlord and tenant did not exist, and as there was no
beneficial use or occupation, an action could not have been main-
tained on an implied agreement to pay."

In *Van Etten et al. v. Kelley,* 66 Ohio St. 605, 64 N. E. 560,
the syllabus is as follows:

"An oil lease, which required certain wells to be completed
within stated times, contained the following: 'In case no well is
completed within thirty days from this date, then this grant shall
become null and void, unless second party shall pay to first party
thirty dollars each and every month, in advance while such com-
pletion is delayed.' Held, that this did not constitute a promise or
obligation to pay rental; and held, further, that the lessee had the
option to complete wells, or pay rentals, to keep the lease alive;
and that, upon breach of the agreement to complete wells, no ac-
tion would lie for the recovery of rentals."

In *Glasgow v. Chartiers Oil Co.,* 152 Pa. 48, 25 Atl. 232, the
syllabus is as follows:

"An oil lease demised the oil and gas under the grantor's land
with the right to go upon and operate the land for oil and gas pur-
poses. The lease was to continue for five years and as much
longer as oil or gas should be found in paying quantities. The
consideration was a bonus of $100, and a royalty of one-eighth
part of the oil produced. If gas was found, the rental was fixed
at $300 per year for each well. The lease then proceeded as fol-
lows: 'Provided, however, that this lease shall become null and
void and all rights hereunder shall cease and determine unless a
well shall be completed on the premises within one month from the

date hereof, or unless the lessee shall pay at the rate of $100 monthly in advance for each additional month.' Held, that the lease contained no covenant on the part of the lessee to pay rent or develop the land. The only penalty imposed upon him for failure to operate the land or pay $100 per month for delay was a forfeiture of his rights under the agreement. The legal effect of the agreement is to confer on the grantee the right to explore for oil on the tract described. If he does not exercise the right within one month, it is lost to him, unless he chooses to pay $100 in advance, as the price of another month's opportunity to explore. If he does exercise it, and finds nothing, he is under no obligation to continue his explorations. If he explores and finds oil or gas, the relation of landlord and tenant or vendor and vendee is established, and the tenant would be under an implied obligation to operate for the common good of both parties and pay the rent or royalty reserved."

In the opinion it is said:

"The appellant contends that, because he might pay, under the terms of the contract, he may be compelled to pay. But payment was the means provided by the contract by which the exercise of the right of the lessor to assert a forfeiture could be postponed. If the lessee did not wish to postpone the exercise of such right, he had only to refrain from making the payment."

In *Snodgrass v. South Penn Oil Co.,* 47 W. Va. 509, 35 S. E, 820, the syllabus is as follows:

"Where a party leases a tract of land for the purpose of mining and operating for oil and gas, the lessee contracting to deliver to the credit of the lessor one-eighth of the oil produced, and saved from the premises, and to pay $200 per year for the gas from each well drilled, and the lease also contains the following provision: 'Provided, however, that this lease shall become null and void, and all rights thereunder shall cease and determine, unless a well shall be completed on the premises within one year from the date hereof, or unless the lessee shall pay at the rate of $350 quarterly in advance for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed.' Held, that this provision did not bind the lessee to pay any rent for the land, or for delay in commencing to operate for oil and gas, and, in the absence of some other clause binding the lessee to pay for such rent or delay, an action of assumpsit could not be maintained on such lease for failing to pay such rent, or for such delay."

See, also, *Robinson v. Boys,* 61 N. J. Law, 179, 38 Atl. 813; *Rawlings et al. v. Armel et al.,* 70 Kan. 778, 79 Pac. 683.

Under the lease in the case at bar, no obligation existed on the part of the lessee to pay the delay or rent money, and the contract was in effect an option during a certain period to explore for oil and gas, but as a condition to this option the delay or rent money must be paid at the rate of $80 per year, quarterly in advance.

In *Superior Oil & Gas Co. v. Mehlin,* 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942, it was held:

"A different rule of construction obtains as to oil and gas leases from that applied to ordinary leases or to other mining leases; and, owing to the peculiar nature of the mineral, and the danger of loss to the owner from drainage by surrounding wells, such leases are construed most strongly against the lessee and in favor of the lessor."

This contract is an option to explore for gas and oil. The rule is settled by this court that, when contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound. *Kolachny v. Galbreath et al.,* 26 Okla. 772, 110 Pac. 902; *Jones v. Moncrief-Cook Co.,* 25 Okla. 856, 108 Pac. 403.

Here we have a contract that is unilateral; the lessee being bound to do nothing, except at his own option. It has expended no money by way of developing the lessor's property. The well that was sunk on the Gibson tract was in all probability sunk in accordance with a contract made with the owner thereof to prevent a forfeiture of that lease, and such was in all probability the case where other wells were sunk on adjoining lands. The lessor had no direct interest, so far as this record discloses, in the development of the Gibson tract. This contract clearly contemplated the exploration for oil as a speculation or promotion on the part of the lessee, which is permissible under the law. The consideration for the first year's delay in making this development on lessor's tract was $200 cash in hand paid, and the commencement within 30 days from the date of the lease of the sinking of a well on the Gibson tract. That year elapsed and no well was sunk or begun on the

tract of the lessor. The lessee had the option to be allowed additional time as delay in the exploring of lessor's tract by paying to the lessor $80 for each year thereafter such completion was delayed; such delay money to be paid quarterly in advance. This lease, being an option, is the anomalous construction to be here adopted of the language, "then this grant shall become null and void unless second party shall pay to the first party eighty ($80.00) dollars for each year thereafter such completion is delayed, said rental to be paid quarterly in advance," so as to change this part of the lease from an option to a tenancy, creating the relation of landlord and tenant for a year when the first quarterly payment in advance is made, thereby obligating the lessee to pay the other three quarterly payments? This would violate the settled rule of construction that an option is to be construed liberally in favor of of the party granting it and strictly against the holder thereof. If a clause in an option contract or lease is intended to be, not a part of the option, but a rental contract, binding the lessee to pay a certain rent, the parties thereto should have made such intention reasonably certain, especially so in view of the settled rules of construction as to option contracts. Every intendment by presumption is here in favor of the lessor. The reasonable construction of this language is that, if no well is commenced on the premises within one year from the date of the lease, then the grant shall become null and void unless the lessee shall pay to the first party at the rate of $80 per year for each year thereafter such completion is delayed; said delay money, called "rental," to be paid quarterly in advance. Default having been made in the payment of the third quarter, for what reason should a court of equity intervene to save the lessee from forfeiture? Unless some equitable reason exists no court of chancery should have the hardihood to intervene against the rules of law and interfere with the letter of this contract. No case has been cited where, similar language being used in the lease, equitable relief was granted, except where the lessee was in possession of the leased lands and making improvement. *Lynch v. Versailles Fuel Gas Co.,* 165 Pa. 518, 30 Atl. 984; *Edwards et al. v. Iola Gas Co.,* 65 Kan. 362, 69 Pac. 350;

*Duffield v. Hue,* 129 Pa. 94, 18 Atl. 566; *South Penn Oil Co. et al. v. Edgell et al.,* 48 W. Va. 348, 37 S. E. 596, 86 Am. St. Rep. 43; *Little Rock Granite Co. v. Shall,* 59 Ark. 405, 27 S. W. 562.

Had the lessee· entered upon this 80-acre tract and sunk a well and made development and made an outlay of money for the direct benefit of the lessor, if, by misadventure or misfortune or mistake, the lessee did not pay the quarterly payment on time, a court of equity might then intervene to remove the forfeiture; but no such case exists in this record.

In *Harris v. Ohio Oil Company,* 57 Ohio St. 118, 48 N. E. 502, the lessee took possession of the tract of land and drilled 12 wells. The lessor claimed that then more wells should be drilled and undertook to re-enter and drill the same himself. An injunction was awarded the lessee against the lessor drilling on the property; the trial court sustaining the lessee's contention.

In *Duffield et al. v. Michaels et al.,* 102 Fed. 820, 42 C. C. A. 649, the suit was brought by the lessor to cancel the lease; the lessee having taken possession and begun to develop the property. The court denied the relief.

In *Monfort v. Lanyon Zinc Co.,* 67 Kan. 310, 72 Pac. 784, the delay money was paid in advance, and the lessor brought suit to cancel, not for specific performance, and failed therein.

In *Consumers' Gas Co. v. Littler,* 162 Ind. 320, 70 N. E. 363, the action was instituted by the lessor for cancellation. The court held that he had waived the forfeiture.

In *Allegheny Oil Co. v. Snyder,* 106 Fed. 764, 45 C. C. A. 604, the rents or delay money had all been paid, but there was no development. The lessor brought suit to cancel, which was denied.

In *Doddridge County Oil & Gas Co. v. Smith et al.* (C. C.) 154 Fed. 970, suit was brought by the lessor to cancel. The lessee was in possession, developing the property. The injunction was denied.

In *Brewster v. Lanyon Zinc Co.,* 140 Fed. 801, 72 C. C. A. 213, a forfeiture was enforced at the instance of the lessor.

We have been unable to find a single case where a court

of chancery ordered the specific performance of a lease at the instance of a lessee where there had been no development and the lease provided only that it should be forfeited unless the lessee paid a certain sum of money for delay, such contract being merely optional; but, where the contract provided that there should be certain development or the lessee should pay a certain specific sum of money, then, in the event of delay or failure of development, an obligation was incurred on the part of the lessee to pay a certain sum of money. Of this character of cases are *Hukill v. Myers et al.*, 36 W. Va. 639, 15 S. E. 151; *Steiner v. Marks*, 172 Pa. 400, 33 Atl. 695; *Campbell v. Rock Oil Company*, 151 Fed. 191, 80 C. C. A. 467.

It is further contended that the lessor was estopped from declaring this forfeiture. The quarterly payment due on October 15, 1907, was sent by check from Independence, Kan., on that date, reaching Lowe on Ocober 16th, the next day, which was accepted by him. The second quarterly payment was sent from Independence, Kan., by check on January 11th, reaching him prior to January 15th. The third quarterly payment, according to the finding of the trial court, was not sent from Independence, Kan., until April 20th, five days after the date said quarterly payment was permitted to be made and two days after the forfeiture had been declared. The trial court held that the accepting of the one payment one day late was not sufficient to show that the lessor reasonably indicated to the lessee that he would waive the strict compliance with that part of the option, to wit, the time of payment. We cannot say that in that he erred, for, as the time approached in which he was to make the second payment, the same was mailed four days before the time expired in which he was permitted to make such payment, when it would only take one day for the check to reach the lessor. The record rebuts the idea that the acceptance of the check one day late one time misled the lessee, for the lessee, when he made the second payment, evidently acted on the assumption that he was bound to make such payment by the 15th of the month by mailing check within ample time for it to reach the place of destination. There

is no question in this case as to the miscarriage of the check by mail, or the lessee being thereby prevented by an unavoidable casualty or misfortune from making such payment.

Courts of equity are not justified in finding estoppels or waivers against contracts made and entered into by parties capable of executing the same, except upon a sufficient predicate. Contracts are made and entered into in order that the rights of the parties may be definitely and certainly fixed thereunder, and, when such terms of forfeiture are fixed in such contracts as are permitted by law, courts of equity should relieve against the same only in a proper case.

No case has been cited where the lessor was held to have waived a forfeiture or was estopped from insisting upon the same upon such a state of facts as exists in this record. •

It follows that the judgment of the lower court must be affirmed.

All the Justices concur.