## BARNSDALL v. OWEN.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1912.)

No. 3,671.

1. INDIANS (§ 16*)—OIL AND GAS LEASES—VALIDITY OF SUBLEASE.

A contract by which a lessee in an Indian oil and gas lease parted with the management and control of operations thereunder to another, who was to conduct such operations at his own expense and risk and to have a beneficial interest in the production, is a transfer of an interest in the lease, within the regulations prescribed by the Secretary of the Interior and embodied in such lease, providing that no sublease, assignment, or transfer thereof, or of any interest therein, could be made without the written consent of the lessor and the Secretary first obtained, and without such consent the contract is void.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; Dec. Dig. § 16.*]

2. SPECIFIC PERFORMANCE (§ 55*)—CONTRACTS ENFORCEABLE—AGREEMENTS AGAINST PUBLIC POLICY.

A lessee in an Indian oil and gas lease, which had not been approved by the Secretary of the Interior, as was essential to its validity, entered into a contract by which he transferred a beneficial interest therein to another, contrary to its provisions and to the regulations prescribed by the Secretary. Fearing that such contract would prevent the approval of the lease, it was canceled by mutual consent under an agreement that, after such approval was secured, it should be renewed in the name of some third person, but for the benefit of the same grantee. Held, that such agreement, being for the sole purpose of deceiving a public officer in the discharge of his duties, was contrary to public policy and void, and that a court of equity would not specifically enforce it, or grant other relief to a party thereto.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 173–176; Dec. Dig. § 55.*]

Appeal from the Circuit Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by Theodore N. Barnsdall against Charles Owen. Decree for defendant, and complainant appeals. Affirmed.

John J. Jones, of Chanute, Kan., and James A. Veasey, of Bartlesville, Okl., for appellant.

George S. Ramsey, of Muskogee, Okl. (C. L. Thomas, of Muskogee, Okl., and George & Campbell, of Bartlesville, Okl., on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. This is a suit by Barnsdall to set aside the mutual cancellation of a written contract between him and Owen, or alternatively to enforce specifically an oral agreement to make another contract in the same terms with some person to be designated by him, and for an accounting and damages. The bill was dismissed on Owen's demurrer, and Barnsdall appealed.

[1] Owen had secured some oil and gas leases from Cherokee Indian allottees the validity of which depended upon their approval by the Secretary of the Interior. Act July 1, 1902, c. 1375, 32 Stat. 726. Regulations of the Secretary in force at the time and applicable to the case provided that "no lease shall be sublet, transferred or assigned" without his consent and approval, that an applicant for the approval of an oil or gas lease must state under oath that he is not directly or indirectly interested in leases of that character embracing more than 4,800 acres, and that applications by persons who do not themselves intend to conduct operations on the land will be rejected. The leases from the Indians to Owen were on forms prescribed by the Secretary, and each contained a provision "that no sublease, assignment or transfer of this lease or of any interest therein or thereunder can be made without the written consent of the lessor and the Secretary of the Interior first obtained," also that it was subject to the regulations lawfully prescribed, and that the lessor might annul the lease for a violation of any of its stipulations. Barnsdall had already reached the prescribed maximum of leased acreage. Notwithstanding these things, Owen and Barnsdall entered into a contract before the leases were approved, which, when the Secretary called upon the former for sworn proof touching matters in the regulations, they feared would result in their abrogation and total loss. So they indorsed a cancellation on their contract, dated it back some months, and signed it. Barnsdall specifically alleges in his bill that the consideration moving to him for this was Owen's oral promise to make another contract in identical terms with that canceled, but with some party he (Barnsdall) might designate, the new or substituted contract to be submitted to the Secretary, if his approval was deemed essential to its validity, when Barnsdall made the designation; that until Barnsdall made the designation he should continue to receive his substantial dues under the canceled contract; and that the substitute, when made, should nevertheless be for his benefit.

It is now claimed that the canceled contract was not contrary to any regulation, but was a working agreement calling for the mere employment of Barnsdall in the development of oil and gas, and that its cancellation was the result of fraud and mistake. Though some of

the clothing of a hiring of service was used in the contract, the substantial body within was essentially different. So clearly is this so that their fear for the existence of the leases if the contract remained in force was fully justified. An agreement in the form of lease for a limited term of years, such as these were, granting the right to explore for oil and gas, and to retain that found and extracted, is of a peculiar class. The interest of the lessee is more like a license than an estate in the land itself. Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Frank Oil Co. v. Belleview Co., 29 Okl. 719, 119 Pac. 260; Smith v. Root, 66 W. Va. 633, 66 S. E. 1005, 30 L. R. A. (N. S.) 176; O'Neil v. Sun Co. (Tex. Civ. App.) 123 S. W. 172; Dickey v. Coffeyville, 69 Kan. 106, 76 Pac. 398. Unlike a grant of coal in place, the lease does not give the oil and gas, unless the lessee finds and removes it during the term, and under the regulations governing such leases as those here only so much of the land may be used as is reasonably necessary for the work. A contract by which a lessee parts with the management and control of the operations to another, and gives him the beneficial interest in the fruits, is within the regulations of the Secretary of the Interior, however it may be disguised by words.

With these principles in mind, let us examine the contract between Barnsdall and Owen, which the former wishes restored. It put Barnsdall in charge of the operations for oil and gas, and gave him the same privileges and subjected him to the same restrictions as were granted and imposed upon Owen by the leases. Saving the right of Barnsdall to terminate the contract as to any of the leases after exploration, it was to endure during the entire leasehold term. It was "binding upon the heirs, executors, administrators, and assigns of both of the parties." Barnsdall's operations were to be carried on at his own expense, subject to reimbursement from the proceeds of oil if any were found. If any of the land proved to be gas-producing, without oil, he was to have the entire benefit, except he was to pay Owen $10 per acre of gas territory and also the royalty due the lessors. If gas territory once proved ceased as such, and turned to oil, Owen was to refund the $10 per acre, and thereafter share the oil with Barnsdall. Owen incurred no personal responsibility for Barnsdall's expenditures for oil wells. The latter was to be reimbursed out of the proceeds of the oil after the royalties were paid, and the balance was to be divided equally. In respect of the operations, each lease was to be independent of the others, so that, if one was unprofitable, Owen should still have his half of the oil profits of the others. Barnsdall was to offset all paying oil wells drilled within 200 feet of the leased lands. The tanks, etc., placed by Barnsdall on the leased premises were to remain his property until they were fully paid for out of the proceeds of oil, when they were to own them equally. In all cases the royalties due the Indian lessors were to be paid through Owen, by Barnsdall as to the gas, and by both as to the oil.

It needs no discussion to show that this was not a mere working agreement or employment of Barnsdall's services for the development of the lands. It transferred to Barnsdall Owen's entire interest un-

der the leases of gas-producing land, and admitted him to a complete half interest in those of oil. Whether technically an assignment or a subletting is immaterial. It was a transfer of interest contrary to the leases, the form of which was prescribed by the Secretary, and it also violated the limitation prescribed by him to prevent the natural resources of the Indian lands from falling into the control of a few hands. The retention of Owen as the medium of royalty payments does not affect the substantial character of the contract.

[2] The plan set forth in the bill appears to have been one to circumvent the regulations of the Secretary of the Interior, to dissolve temporarily a contract relation which it was feared, and rightly so, would, if known, prevent his approval of the leases, and then, after approval was secured, to restore it in the name of some third party for complainant's benefit, thus accomplishing the same object by indirection. A contract, the direct and sole object of which is the deception of a public official in the performance of his duties, is contrary to public policy and void. A court of equity will neither enforce such a contract nor aid the parties to regain their prior status. It will leave them as it found them. Something is said about the machinery, etc., which complainant put on the premises. We do not determine his right to it in this case; if he has one, he can assert it in an action at law.

The decree is affirmed.

SANBORN, Circuit Judge, concurs in the result.