### MITCHELL *et al.* v. HUMPHREY.

No. 2279.   Opinion Filed January 21, 1913.

(129 Pac. 744.)

1.  **EJECTMENT—Title to Maintain.** At common law, in an action of ejectment, the plaintiff seeking to recover lands occupied by another must recover upon the strength of his own title, rather than upon the weakness of the title of his adversary.

2.  **SAME—Equitable Title.** Under section 6122, Comp. Laws 1909, an equitable title will support an action in ejectment.

3.  **SAME—Evidence.** Evidence examined, and it is held that it fails to show title, either legal or equitable, in plaintiff, and that the finding of the court on the evidence in favor of defendant was correct.

(Syllabus by Brewer, C.)

*Error from District Court, Craig County;*
*T. L. Brown, Judge.*

Action by Harry M. Mitchell and others against Walter D. Humphrey, administrator. Judgment for defendant, and plaintiffs bring error. Affirmed.

*W. H. Kornegay,* for plaintiffs in error.

*W. D. Humphrey,* for defendant in error.

Opinion by BREWER, C.   This is an action in ejectment to recover possession of the S. ½ of the N. E. ¼ of the N. E.· ¼, and the N. W. ¼ of the N. E. ¼, section 17, and the N. W. ¼ of the N. E. ¼ of the N. W. ¼ of section 21, all in township

26 N., range 16 E., and for damages for unlawfully withholding possession of the same.

These lands were allotted to John E. Sheehan, a Cherokee Indian of one-sixteenth Cherokee blood, who became 21 years of age April 24, 1908. On January 20, 1908, the allottee executed a departmental oil and gas lease covering these lands in favor of the defendant, Geo. L. Berringer, under the terms of which the allottee was to receive a bonus of $500 and 12½ per cent. of the oil produced. One hundred dollars of this bonus was paid to the allottee upon the execution of the papers. The remaining $400 was deposited in a bank in escrow, to be paid the allottee upon the approval of the lease by the Secretary of the Interior. On April 24, 1908, the date he became of full age, upon a promise of a larger bonus, the allottee entered into another lease with the Delaware Development Company, subject to the approval of the Department of the Interior. Both these leases were filed with the Indian agent at Muskogee, to be transmitted in the usual course for the action of the Secretary of the Interior. The allottee filed with the Indian agent a protest against the approval of the Berringer lease. On May 16, 1908, the allottee received from the defendant, Berringer, $50 of the bonus money due on the Berringer lease. This was after he became of full age. At the hearing at Muskogee the findings and conclusions were in favor of the Berringer lease, and it, together with the lease to the Delaware Development Company, was transmitted to the Department of the Interior for consideration. The Commissioner of Indian Affairs recommended the approval of the Berringer lease and the disapproval of the Delaware Development Company lease, and on July 24, 1908, the Acting Secretary of the Interior finally approved the lease to Berringer, who went into possession of the lands, prospected for and discovered oil in paying quantities, and had, at the time this suit was filed in November, 1908, four or five producing oil wells on the property, representing an outlay of about $22,000; oil having been produced to the value of approximately $6,000. The defendant has been at all times in possession of the land. The plaintiffs have at no time been in possession of any part of the land.

This suit in ejectment for possession of the land is based upon a certain written instrument executed by the allottee John E. Sheehan on August 6, 1908, and which was placed of record in the office of the register of deeds of Nowata county in a few days after its execution. The instrument named in its body each of the parties plaintiff, but was signed and executed by the allottee, H. M. Mitchell, and M. F. Knight only. The language employed in the body of the instrument is that usually found in oil and gas leases; describes the land, mentions the consideration, and "does hereby grant, let, lease and demise unto the said parties of the second part, their heirs and assigns, for the sole and only purpose of mining and operating for oil and gas," etc., with the description of the property, following with the usual conditions found in such leases, and with the following special provisions:

"It is further provided that five hundred ($500.00) dollars of the purchase price is to be paid by the parties of the second part to the party of the first part at the execution of this agreement, and that the balance of said purchase price, to wit, twenty-five hundred ($2,500.00) dollars, is to be paid by said second parties to the said first party as soon as the leases heretofore executed by said first party to George L. Berringer and to the Delaware Development Company are disapproved by the Secretary of the Interior. It is further provided that this lease shall become null and void if a well is not commenced on the leased premises by said parties of the second part within thirty (30) days after they have been notified of the disapproval by the Secretary of the Interior of the two (2) leases aforesaid. It is further agreed that in case either the lease executed by said first party to the Delaware Development Company, or the lease executed to George L. Berringer, should be approved by the Secretary of the Interior, thereby rendering this lease null and void, the said party of the first part hereby agrees to repay to the said parties of the second part the aforesaid sum of five hundred ($500.00) dollars, and such other sums as they may advance to him, with interest at the rate of eight (8) per cent. per annum, within two (2) years from the approval of either of said leases. And in that event, to secure the said payment of the five hundred ($500.00) dollars, party of the first part hereby mortgages to said parties of the second part the land herein described."

The court made and filed written findings of many facts,

all in favor of defendant, and concluded, among other things, that "the lease executed by John E. Sheehan to the plaintiffs, upon which they have sued in this case, is, since the approval of the lease held by Berringer, by the Secretary of the Interior, effective only as a mortgage, and not as an oil and gas mining lease."

The court found correctly. Under the admitted facts the contract relied on had, by its express provisions, become simply a mortgage between the plaintiffs and Sheehan for the repayment by him to them of the sums advanced to him under the contract. Had the condition subsequent happened—the disapproval of Berringer's lease—the money would have been retained by Sheehan as a part of his bonus, since the contract would have been a lease. As the condition subsequent failed in the approval of Berringer's lease, then the instrument lost all potentiality as a lease, and became a mere mortgage engagement upon the part of Sheehan to return the money so paid him. No reasonable person, we believe, will assert that this paper could be enforced against Sheehan as defendant in any other sense.

The allottee is not a party to this suit. It does not appear that he has taken any steps in court to prevent either the development or production of oil by the defendant. He received the $50 of the bonus on May 16, 1908, and upon the approval of the lease the following July accepted the $350 balance of the bonus. Beginning in November, 1908, he has received substantial monthly royalty checks from the defendant's production of oil, and was so receiving them up to the time of trial. The final judgment was rendered in January, 1910. If oil is still being produced, his testimony leaves no doubt but that he is still willingly receiving the royalties under defendant's lease. After the approval of defendant's lease, the Delaware Development Company seems to have abandoned any interest in the transactions.

It is well settled that at common law, in an action of ejectment, the plaintiff seeking to recover lands occupied by another must recover, if at all, upon the strength of his own title, rather than upon the weakness of the title of his adversary. This is too

well settled to need citation of authorities. While it is true that under our statute (section 6122, Comp. Laws 1909) an equitable title will support the action, while it would not at common law, and this has been ruled (*Shy v. Brockhause,* 7 Okla. 35, 54 Pac. 306; *Jennings v. Brown,* 20 Okla. 294, 94 Pac. 557), yet the plaintiffs in this case have shown no kind of title, either legal or equitable. Their contract indicates they were speculating upon the outcome of a controversy between the allottee and defendant in possession.

Having no rights other than as mortgagees against Sheehan, the owner of the land, the plaintiffs cannot substitute themselves as his tenants. If Sheehan has any controversy with Berringer, which his conduct has not prevented him from asserting, it will be time enough to discuss their relations and respective rights in a suit in which they are involved.

This case being decided on the facts presented, an application of the doctrine of the case of *Kolachny v. Galbreath,* 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451, and note, which would appear to preclude a recovery in this case, is unnecessary; but it is considered timely to state that the rule therein announced has been quoted approvingly in the later case of *Frank Oil Co. v. Belleview Gas & Oil Co. et al.,* 29 Okla. 719, 119 Pac. 260, and by the United States Circuit Court of Appeals, Eighth Circuit, in an opinion by Judge Hook, sitting with Judges Sanborn and Adams, in the case of *Barnsdale v. Owen,* 200 Fed. 519, at the September, 1912, term of that court.

The case should be affirmed.

By the Court: It is so ordered.