## PETERS v. BLEDSOE.

No. 10156—Opinion Filed May 11, 1920.

Rehearing Denied June 1, 1920.

(Syllabus by the Court.)

1. **Contracts—Time As of Essence—Statute.**
Section 968, Rev. Laws 1910, provides: "Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

2. **Same—Necessity of Decision on Question —Evidence Excusing Delay.**
Where a written agreement does not in express terms provide that time shall be considered as of the essence thereof, and the court so finds, and finds also that under the evidence the failure on the part of one of the parties to comply strictly with the terms as to exact time was excused by the conduct of the other party, and the evidence is sufficient to sustain such latter finding, it is not error in such case for the court to decline to go further and decide whether time was of the essence of the contract by necessary implication.

3. **Appeal and Error—Review—Sufficiency of Evidence.**
Where the judgment of a trial court on a decisive question of fact is sustained by the clear weight of the evidence, the judgment will not be disturbed.

Error from Superior Court, Okfuskee County; John L. Norman, Judge.

Action for specific performance to convey land by G. G. Bledsoe against W. S. Peters.

Judgment for plaintiff, and defendant brings error. Affirmed.

W. S. Peters, P. T. McVay, and Geo. B. Rittenhouse, for plaintiff in error.

Huddleston & Stephenson, for defendant in error.

HARRISON, J. The judgment herein sought to be reversed was rendered against W. S. Peters, plaintiff in error, requiring him to comply with the terms of a certain contract or escrow agreement, by which he, plaintiff in error, bound himself to convey to defendant in error, G. G. Bledsoe, a certain tract of land situated in Okfuskee county, Oklahoma. W. S. Peters was an attorney of the Okfuskee county bar, and G. G. Bledsoe was a farmer of Okfuskee county.

On November 1, 1916, Peters and Bledsoe entered into a written agreement which was placed in escrow in the Farmers' & Merchants' Bank of Boley, Oklahoma, by the terms of which agreement said bank was to deliver to Bledsoe the warranty deed attached to said written agreement, by which deed Peters conveyed to Bledsoe a certain 80-acre tract of land situated in Okfuskee county, said deed to be delivered to Bledsoe upon the payment by Bledsoe of certain notes attached to the agreement and the assumption of payment by Bledsoe of a certain mortgage for $1,500 then existing against said tract. One of the notes, amounting to $400, fell due on the 1st day of November, 1917; on said day, however, Bledsoe, then living on the land in question, was confined to his bed, sick of typhoid fever, and under the treatment of a doctor. He told his physician on that day of the note being due on that day and of his desire to pay same, but his physician, Dr. J. L. Scott, advised him he was not able to go to town, that his fever was then 102, whereupon it was agreed between Bledsoe and the doctor that the doctor, who was on intimate and friendly terms with Attorney Peters, should see Peters that day and tell him of Bledsoe's condition and that he had the money to pay the note and would in a few days come in with his wife and pay it off, and should ascertain from Peters whether such arrangement would be satisfactory. The doctor testified that he saw Peters on that day and delivered the mesasge from Bledsoe, and that Peters said, in substance, that such an arrangement was all right; that he had been making some money and would not need what Bledsoe owed on the note for a few days. The doctor further testified that he returned on that day to Bledsoe's home and told Bledsoe what Peters had said.

Bledsoe testified that, relying upon the message his physician had brought him from Peters, he did not go to town that day to make payment, but that the next day, the 2nd of November, he was informed by another party that things did not look just right (meaning the actions of Peters), whereupon he went into the town of Boley on that day, the 2nd of November, and offered to pay the note to the bank, but the banker refused to receive the payment, stating that on the day before Peters had advised him not to accept the payment because the agreement had been breached by Bledsoe's failure to make payment on the first day of November. He thereupon employed an attorney, and within a few days the attorney made a further tender of payment to Peters, which was declined. The bank in the meantime had turned the written agreement and deed attached over to Peters and had mailed the unpaid promissory notes to Bledsoe; thereafter Bledsoe brought suit to require Peters to comply with the terms of the agreement —that is, to accept payment of the promissory notes due and to deliver the deed to the land.

At the conclusion of the trial the court decreed that Peters should replace the escrow agreement with deed attached in the bank, and that Bledsoe should replace the promissory notes with the bank and that the parties, Peters and Bledsoe, should comply with the terms of the agreement, and that upon the payment of the amount due under said agreement, which amount due at that time had been tendered into court and was found by the court to have been tendered, the bank or escrow holder should thereupon deliver the deed to Bledsoe.

Plaintiff in error asks that this judgment be reversed, principally upon the ground that by the terms of the agreement "time was made the essence of the contract," and that by the failure on the part of Bledsoe to comply with the terms of the contract by payment of the note on the 1st of November he should forfeit his right to a fulfillment of the contract.

On the other hand, it is contended by Bledsoe, first, that by the terms of said contract time was not made the essence thereof, and, second, that his failure to make payment on the 1st day of November was justified by Peters' message sent by the doctor, even though the agreement be construed to mean that "time was of the essence of the contract."

The court found that, under the terms of the agreement, time was not expressly made

the essence of the contract, and further found that, though Bledsoe did not strictly comply with the terms and conditions thereof with reference to the time of payment, his failure to do so was excused by the conduct of Peters, but did not find whether, by necessary implication, time should be considered as of the essence of the contract.

Both of these findings are sustained by the record. The instrument in question did not in words expressly provide that time was to be considered as of the assence of the contract. This being true, and the finding that Bledsoe's failure to make payment on November 1st was excused by the conduct of Peters being sustained by the evidence, it was therefore unnecessary for the court to go into the field of speculation and decide whether by necessary implication "time was intended to be the essence of the contract."

Section 968, Rev. Laws 1910, provides:

"Time is never considered as of the essence of a contract unless by its terms expressly so provided."

In Drumright v. Brown et al., 76 Okla. 162, 184 Pac. 110, this court, in a well-considered opinion by Mr. Justice Rainey, after quoting the above statute, said:

"Although no particular form of expression is necessary, it must appear from the plainly expressed provisions contained in a contract, independent of all extraneous matter or circumstances, that it was the intention of the parties thereto that time should be of the essence thereof."

The obvious reason for the wording of the above statute, as well as for the foregoing interpretation thereof by this court, is that the terms of the written instrument are more clearly and more safely expressed by explicit wording than by being left to the uncertainties of implication.

Additional light may be thrown upon and a clearer view obtained of the full meaning of the above statute by carefuly considering in connection therewith the preceding sections 945 to 967, inclusive, bearing in mind also that said sections are under artcle 3 of the chapter on Contracts and such article devotes itself entirely to defining just how contracts in this state are to be interpreted.

Section 945 provides:

"All contracts, whether public or private, are to be interpreted by the same rules, except as otherwise provided by law."

Section 946 provides that effect is to be given to the intent of parties; 947 provides how intention of parties may be ascertained; 948 provides what language governs; 949 pro-

vides how intention is to be ascertained from writing; 950 provides that error is to be disregarded; 951 provides for giving effect to every part; 952 provides when several contracts are taken as one; 953 provides what interpretation favors validity; 954 provides for words to be taken in ordinary sense; 955, for technical words; 956, what law governs; 957, what circumstances explain; 958, for restricting the contract to intention of parties; 959, that belief of promissor governs in case of ambiguity; 960 provides that particular clauses are subordinate to general intent; 961, that written and original parts control; 962, how repugnancy must be reconciled; 963, that inconsistent words be rejected; 964, for interpretation against party causing uncertainty; 965, when reasonable stipulation implied; 966, when necessary incidents implied; 967, that reasonable time allowed where not specified.

But when it comes to the question as to when time is of the essence of a contract the statute makes a distinct exception, and, emphasizing the importance of the provision of a contract in that regard, it thus provides:

"Time is never considered as of the essence of a contract, unless by its terms expressly so provided."

The Legislature, no doubt, recognized the injustice that might be done to one of the parties thereto by an erroneous construction, and recognized further that if it were the intention of the parties to make time of the essence of their contract, its terms should expressly so provide. In other words, the Legislature, recognizing the importance of this feature of a contract and the injustice that might be done by an erroneous interpretation, recognized also that if such were the intention of the parties, there could be no easier, plainer, or safer way for providing so than by saying so; hence it expressly provides as above quoted.

Therefore the trial court is correct in finding that the contract did not expressly provide that time should be of the essence thereof.

As to the finding that Bledsoe's failure to comply strictly with the contract as to payment of the note was justified by the conduct of Peters, the court had these facts to consider, viz: the fact of Bledsoe's being sick was not denied; the fact that he told his physician of his desire to pay off the note that day was not denied, but proven by positive testimony; the fact that the doctor forbade him to go to town and that word was sent to Peters of his intention, desire, and ability to pay the debt on that day, unless

Peters was willing to wait until he got able to come in; the fact that the message was delivered to Peters, and the fact that Peters did not signify a desire for payment on that day, and did not inform the doctor that he demanded payment on that day, and the fact that the doctor's message from Peters to Bledsoe influenced Bledsoe in not going to make the payment that day—are all facts which the court had for consideration and which were undisputed. There is a dispute as to the message which Peters sent to Bledsoe by the doctor. The doctor said Peters told him that it would be all right; that he had made some money, or was making money, and would not need it. Peters denied recollection of making such statement. Therefore that fact was in dispute, and the court was authorized to give credence to such testimony as appealed to his senses; but there is no dispute as to the fact that when the doctor went to him with the message from Bledsoe Peters did not in any way signify that he would demand payment on that day, or that he would consider the contract forfeited if not paid on that day.

These undisputed facts sustain the court's finding that Bledsoe's failure to make payment on the first was excused by the conduct of Peters.

It is also contended by Peters that Bledsoe did not have enough money in the bank to pay off all that was due; that the tender was therefore insufficient to constitute a tender in law. Peters further contends that the fact that Bledsoe stated to the doctor and sent word by the doctor to Peters that he, Bledsoe, and his wife would come in and make the payment should be taken to prove that Bledsoe did not have sufficient money in the bank to pay same, but that he and his wife would come in and obtain a loan sufficient to cover the amount due. With this contention the trial court evidently did not agree, and we see no reason for questioning its discernment in the premises. For, taking the contention of Peters in its fullest legitimate effect and conceding that Bledsoe did not have all the money in the bank, it is not disputed that he or his wife or both had the money at home, nor that he and his wife could have obtained the money on the first, if he did not already have enough, nor that they would have come in on the first day of November and obtained it, except for the conduct of Peters, as was found by the court.

Therefore the numerous authorities cited by plaintiff in error as to what constitutes a legal tender are immaterial. Likewise the

numerous and well-considered authorities cited in support of his contention as to when time is of the essence of a contract, and what is to be done in such cases, are not applicable to the facts in this case, governed as they are by the statutes and decisions of this state.

The judgment is affirmed.

RAINEY, C. J., and KANE, PITCHFORD, JOHNSON, and McNEILL, JJ., concur.