## GARFIELD OIL CO. v. CHAMPLIN et al.

No. 12686—Opinion Filed Oct. 14, 1924.

1. Oil and Gas—Action to Cancel Lease— Insufficiency of Defense of Mistake.

Defendant alleged in its answer that on or about the 23rd day of February, 1916, the date upon which plaintiffs' lease was executed, the Chanute Refining Company and B. A. Garber had procured leases upon a large number of tracts of land in Garfield county: that prior thereto, oil and gas had not been discovered within many miles of said tracts of land; that the leases were obtained for the purpose of exploring said

land for oil and gas; that the lands at that time had no value whatever for oil or gas mining purposes; that plaintiffs knew that said leases, and each of them, were secured to constitute a block of acreage sufficiently large to justify the expenditure of a large sum of money in prospecting said lands for oil and gas; and well knew that the lessees would not undertake to prospect said tract of land, or any part thereof, for oil and gas, unless a sufficient number of acres were included in said block to make the financial returns to the lessees sufficient, in case oil or gas was discovered, to justify them in taking the chance of the great loss of time and money in case of failure upon their part to discover oil and gas; that plaintiffs executed said lease for the purpose of including the land therein described in the acreage to be contained in said block of acreage, in order to induce the lessees to prospect the same for oil and gas; that it was understood and agreed by and between the lessees and the plaintiff that should the lessees commence a well within six months on the said tracts of land, or any of them, in that event no rental should be due or paid under the lease, but that the commencing of said well should be in lieu of all rentals; that said lease was executed upon a printed form; that at the time of its execution, that portion of the printed lease providing for the completion of a well on the premises leased on or about a certain date, was, inadvertently allowed and permitted to remain in said lease; that the blanks in said part of said printed lease were filled in so that the printed portion of the lease required the lessees to complete a well on said premises on or before the 23rd day of August, 1916, but that the true agreement and understanding of said parties was expressed, and intended to be expressed, by the last clause of the lease made in writing upon said printed form, which reads as follows, to wit: "Second party agrees to commence drilling a well within six months on the block of leases, of which this is a part." Held, that the evidence offered in support of the answer fails to sustain the allegation of the answer.

### 2. Oil and Gas—Lease—Drilling or Delay Money—Time as of Essence of Contract.

Where an oil and gas lease expressly provides that rights of parties shall terminate if no well be drilled within a fixed period unless the lessee on or before that date shall pay or tender to the lessor a fixed sum, time is of the essence of the contract.

### 3. Same.

Mere ignorance of the contents of a lease on the part of one who becomes a party thereto is not sufficient to excuse noncompliance therewith. The lessee is bound by its terms and where under the terms of an "unless" lease, the lease terminated if a well was not completed in six months from the date thereof, or rentals paid as therein provided, the failure to complete a well, or pay the rentals within the time stipulated, automatically terminated the lease.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by H. H. Champlin, George Beggs, and Abbie N. Beggs, against Garfield Oil Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

This action was commenced in November, 1916, by H. H. Champlin, George Beggs, and Abbie N. Beggs against the Garfield Oil Company for the purpose of quieting title to what is known as the Beggs farm, being the southwest quarter of section 24, township 22, range 4 west, Garfield county. The parties will be referred to as they appeared in the court below.

The action grows out of an oil lease executed by the plaintiffs George Beggs and Abbie N. Beggs to the Chanute Refining Company on the 23rd day of February, 1916. Walter Campbell was representing the Chanute Refining Company and went to the plaintiffs George Beggs and Abbie N. Beggs and represented to them that he needed a lease on their land to square with a block of leases that they were making up. Campbell explained to them that it was "wild cat territory," and that they could not afford to pay any bonus, but said it was their intention to commence drilling a well on this block of leases right away, and appeared indifferent as to whether the lease ran one or five years, as they were going to commence operations at once. Beggs tried to get them to drill the test well on his lease. Campbell explained that they could not agree to do that as they would have to drill the test well wherever the geologist found was the best location. Campbell finally drew up a lease in the ordinary form of a commercial lease for oil and gas, which said form and said lease as executed had the following clause in it:

"If no well be completed on said land on or before the 23rd day of August, 1916, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the First National Bank at Medford, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $80, which shall operate as a rental and cover the privilege of deferring

the completion of a well for six months from said date."

At the end of the lease, written in with a pen and ink, was the following clause:

"Second party agrees to commence drilling a well within 6 months on the block of leases of which this is a part."

These two clauses in the lease and. the construction to be placed on them is the principal contention between the parties to this suit. The defendant, Garfield Oil Company, who succeeded to the rights of the Chanute Oil Company in said lease, contends that the clause written at the end of the lease modifies the other clause above quoted, and that they were not compelled to pay rental, provided they commenced drilling the test well within six months. The contention of the plaintiffs is that under the first clause, above quoted, the defendant had to pay rental on or before the expiration of the six months period or the lease was forfeited as to both parties, and that the clause added at the end of the lease did not have the effect of relieving the defendant from payment of rentals. Prior to the taking of this lease, one B. A. Garber had leased up a block of leases, about 60 in number, and had entered into a contract for drilling a well on the lease in said block that the geologist located for the test well. All of the lessors are mentioned in that agreement and they sign the same as lessors, and B. A. Garber as lessee, and this was deposited in the Farmers State Bank in escrow, and in case the well was not commenced within six months thereafter the leases included in said contract should be returned to the lessors and become null and void. These leases were all made to B. A. Garber. The lease from George Beggs and Abbie N. Beggs was made to the Chanute Refining Company and were not a part of the block of leases agreed on in Garber's contract. The leases taken by Garber all had a clause to complete a well on some one of the leases in said block within 12 months, while in the Beggs lease and four others taken about the same time, the lease had a clause to complete a well within six months.

The defendant, Garfield Oil Company, commenced drilling a well on what is known as the Hoy lease within the six months, and was drilling a well thereon at the expiration of the six months period, but failed to pay the rental to Beggs and wife within the six months as provided in said lease which expired on the 23rd day of August, 1916. Beggs and wife waited until the morning of the 24th of August, and went to the bank where the rental money was

to be deposited and inquired as to whether the rent had been deposited to their credit, and were informed that it had not. Beggs and wife then notified the bank in writing not to receive the rent or any money to their credit from the defendant as they considered the lease terminated. The defendant was drilling on the well and continued to drill until late in the night of the 25th of August when they struck gas in said well; and early in the morning of the 26th, they wired the bank at Medford to deposit $80 to the credit of George Beggs and Abbie N. Beggs. That wire was followed with a letter enclosing exchange for the amount, payable to the First National Bank of Medford. The bank notified the defendant that it could not receive the money as they had been notified not to receive it, and returned same to the defendant. The defendant then sent one of its employes, Mr. Shallenberger, to see Beggs and wife to tender them the past due rental, but Beggs and wife refused to receive the money; and Beggs stated to Shallenberger that he was in debt about $2,000, and that he was going to get money out of a lease on the land to pay off this indebtedness. Beggs contended that the lease given to the Chanute Refining Company had terminated, and was null and void. Shallenberger finally agreed to furnish Beggs the money to pay off the $2,000 indebtedness if he would renew the lease, but Beggs declined to do so, as he said he thought he could get more money out of it, and that he had put the matter in the hands of Mr. Theiss, a broker at Enid, to lease for him, but agreed with Shallenberger that he would give him the preference to take the lease at the same price before leasing it to anyone else. The matter went on and Theiss reported from time to time the offers he had had for a lease on the land, and finally told Beggs that he had been offered $12,000 bonus for a lease on the land. Beggs put this up to Shallenberger and Shallenberger told him they would not pay that, and he could take his lease and go to hell with it. Beggs then agreed to lease it for $12,000 bonus with the usual royalty, and the lease was drawn up to the plaintiff H. H. Champlin, and Theiss called Champlin up over the telephone and he came in and executed the lease. That was the first time that Beggs and wife had ever seen Champlin or knew that the lease was to be executed to him. Champlin paid the $12,000 bonus and the lease was delivered to him, and in a few days he commenced drilling a well and had several producing wells on the land at the time this suit was tried. Beggs and wife, before commencing this suit, requested

the defendant to surrender the lease they had given to it, but it refused to do so, and this suit was commenced by Champlin and Beggs and wife against the defendant for the cancellation of the lease executed by Beggs and wife to the Chanute Refining Company, and to quiet title, etc. The defendant filed answer and set up various excuses as to why the rental was not paid when due. It claimed that it was an oversight, mistake, or inadvertance of the employes of defendant, who had charge of the payment of the rentals, and other excuses not necessary to notice here. A demurrer was filed to defendant's answer and sustained by the trial court, and defendant appealed from the judgment of the trial court sustaining the demurrer to the Supreme Court of Oklahoma, where the case was affirmed in part and reversed in part (78 Okla. 91, 189 Pac. 514.). Upon the coming down of the mandate, the defendant, on May 28, 1920, filed its second amended answer to plaintiffs' amended petition, to which plaintiffs' filed reply, and the case was afterwards tried before Hon. J. C. Robberts at Enid, and the court made findings of fact and conclusions of law which are set out at length in the record, and entered judgment for the plaintiffs cancelling the lease made by George Beggs and Abbie N. Beggs to the Chanute Refining Company, and quieting title in the plaintiff Champlin. This appeal is prosecuted from that judgment of the court, and is now before this court for review. Other facts will be noticed in the opinion.

Edw. H. Chandler, Summers Hardy, and Joseph C. Stone, for plaintiff in error.

McKeever, Moore & Elam and Burford, Miley, Hoffman & Burford, for defendants in error.

Opinion by MAXEY, C. This case has been elaborately briefed by both parties, and was ably argued orally before this division of the Commission, and their briefs and oral argument have aided us a great deal in arriving at a decision in this case. The plaintiff in error has assigned 11 points as error which it claims the trial court committed. These various points are discussed under appropriate heads in the brief, and we will take them up in their order. The first point discussed is stated thus:

"The record on this appeal presents a materially different state of facts from that before the court on the former appeal."

This court held on the former appeal (78 Okla. 91, 189 Pac. 514) that the record showed that possession of the leased premises had not been taken by the Chanute

Refining Company or its assignee, Garfield Oil Company. (2) The lessors, Beggs and wife, had no direct interest in the drilling of the test well on the Hoy tract of land. (3) Defendant, Garfield Oil Company, did nothing prior to August 23, 1916, indicating its intention to comply with the terms of the Beggs lease. (4) That the lease under which Garfield Oil Company claims was an unilateral option. (5) The court held that Garfield Oil Company's claim for relief was based on the ignorance or mistake of the agent in not knowing that the rentals were due on August 23, 1916. That case was heard on the petition, answer, and demurrer to the answer. The trial court sustained the demurrer to the answer, and this court affirmed the decision of the trial court as to the 5th subdivision of the answer, and reversed the trial court in sustaining the demurrer to subdivisions of the answer Nos. 1, 2 and 3. The 5th subdivision of the answer was that part of the answer that undertook to set up an excuse for not paying the rental money on or before August 23, 1916, and this court held that the demurrer to that part of the answer was properly sustained. On the coming down of the mandate, the defendant, Garfield Oil Company, filed an amended answer, and to meet the ruling of the court on subdivision 5 of the original answer set up the same excuses for not paying the rent as were set up in its original answer, but added thereto other excuses in their amended answer that alleged that the Beggs tract of land was blocked with other tracts for the purpose of exploration; they alleged possession of the leased premises and alleged part performance of the contract, and alleged that the lease was not a unilateral option, and that their claim for relief was not presented solely on ignorance or mistake of its agent in not knowing when the rental came due. Whether this difference in the answer changes the case as presented to this court on the former appeal we do not deem it necessary to pass on, as under our view of the case the defendant failed on the trial to prove a state of facts that sustain the allegations of its answer in the respects set out. We agree with the court in its former holding on the points above set out, and we do not think the evidence introduced on the trial is sufficient to justify us in changing any of the points decided in the former appeal. But there are other points raised on this appeal that were not raised on the former appeal, and we are inclined to pass on them and not apply the rule "that all matters involved on a former appeal and all matters considered by the court, or that the

court could have considered, becomes the law of the case." This is an important lawsuit, and we are inclined to pass on the questions raised in the argument that we deem necessary to a decision of the case as now presented.

The second point raised by counsel for plaintiff in error is:

"The court erred in overruling defendant's motion to stay proceedings herein until the action of Exchange Oil Company against H. H. Champlin, George Beggs, and Abbie N. Beggs et al. pending in the district court of the United States for the Western District of Oklahoma had been determined."

We deem it unnecessary to review the action of the trial court on this proposition, for the reason that we think the trial court was right in refusing to grant this request as this suit was brought in the state court prior to the case brought in the federal court, and under the decision of the United States Court of Appeals for the Eighth Circuit in the case of Kline v. Burke Construction Company, 271 Fed. Rep. 605, and the same case decided by the Supreme Court of the United States and reported in 260 U. S. pages 226-235, under the decision of the Supreme Court in that case, the court reviewed the authorities on this question, and under this decision we think there could be no question that the refusal of a motion to stay proceedings in this case in the state court until the case in the federal court could be decided was right. In the case of Dennison Brick & Tile Co. v. Chicago Trust Co., 286 Fed. 818, the court said:

"As applied to the instant case, the controlling question is whether, by virtue of the suit to quiet title, the state court took into its jurisdiction a res, a thing, and not merely a personal suit involving no potential conflict of the authority and process of the respective courts.

"In our opinion the state court acquired exclusive jurisdiction of the subject-matter of this litigation. While the rule that priority of jurisdiction over the res gives exclusive jurisdiction is limited to actions which, speaking broadly deal either actually or potentially with specific property or objects, yet the res, the subject-matter, is not necessarily a tangible thing; it may be merely a status, such as marriage affected by a suit for divorce, or a proceeding to probate a will. The rule that the tribunal, state or federal, whose jurisdiction first attaches, holds it to the exclusion of the other until its duty is fully performed, and the jurisdiction involved is exhausted, applies to enforcement of liens against specific property, including the foreclosure of mortgages, and is not limited to cases where property has been actually seized under judicial processes before the second suit is instituted in another court. The test is jurisdiction over the res, not possession of the property. B. & O. R. R. Co. v. Wabash Ry. Co. (C. C. A. 7) 119 Fed. at page 680, 57 C. C. A. 322, .cited and quoted from, with apparent approval, in Kline v. Burke Const. Co., supra; Farmers Loan & Trust Co., v. Lake St. R. R. Co., 177 U. S. 51, 61, 20 Sup. Ct., 564, 44 L. Ed. 667; Roller v. Holly, 176 U. S., at page 405, 20 Sup. Ct. Rep. 410, 44 L. Ed. 520. Nor are proceedings in rem limited to suits directly against property. As said in Pennoyer v. Neff, 95 U. S. 714, 734 (24 L. Ed. 565):

"'In a larger and more general sense, the terms (proceedings in rem) are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases *** instituted to *** foreclose a mortgage, or enforce a lien. So far as they affect property in the state, they are substantially proceedings in rem in the broader sense which we have mentioned.'

"The substantial ground on which statutes providing for substituted service on nonresident defendants in actions affecting real estate within the jurisdiction of the court has been sustained, is that such actions are in rem, or of that nature.

"In respect of classification as to proceedings in rem we can see no valid distinction in principle, on the one hand, between a proceeding to enforce a lien or set aside a mortgage. Statutes of the latter character, equally with those of the former, act directly upon the res, the status of the title. Nor do we find any distinction upon authority. In Roller v. Holly, supra, a suit to enforce a vendor's lien, under a statute providing for substituted service on nonresident defendants, was impliedly held to be in rem. It was there said (176 U. S. 405, 30 Sup. Ct. 412, 44 L. Ed. 520), that the substance of certain decisions of the Supreme Court therein discussed is that 'if the plaintiff be in possession, or have a lien upon land within a certain state, he may institute proceedings against nonresidents to foreclose such lien or to remove a cloud from his title to the land, and may call them in by personal service outside the jurisdiction of the court or by publication, if this method be sanctioned by the local law.'"

However, the record in this case shows that after the denial of the motion of defendants in the case in the Supreme Court, application was made to the United States Court for the Western District for an order staying proceedings in that court until the case could be finally determined in the state court, and the court made an order staying proceedings in the federal court until the case was finally determined in the state

court. So there is no injustice done to the parties by the refusal of the trial court to stay proceedings, and it is not necessary to notice this point further. The next proposition discussed by plaintiff in error is:

"The court erred in holding that the printed provision in the lease requiring the completion of the first well within six months or termination of the contract unless the lessee should pay $80 rental for an extension of the time for the drilling of the first well on this tract, is not in conflict with the written provision requiring the lessee to commence drilling a well within six months on the block of leases of which this is a part."

In our judgment, this is the vital point to be decided in this case. If the clause at the end of the lease changed the other clauses in the lease, as contended by counsel for plaintiff in error, it would necessitate passing on the other questions raised on this appeal. On the other hand, if these two clauses of the lease are to be construed as counsel for defendants in error construes them, then the lessee having made default in the payment of rent on or before August 23, 1916, the lease thereby became forfeited or terminated. There will not be much necessity for passing on the other points argued in plaintiff in error's brief. We have given this proposition a great deal of study and research, and we have reached this conclusion, that counsel for plaintiff in error are wrong in their contention that the clause written at the end of the lease had the effect of modifying or changing the original clause in the printed lease so as to relieve the lessee from paying the rental. The lease executed to the Chanute Refining Company provides:

"If no well be completed on said land on or before the 23d day of August, 1916, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank, at Medford, Okla., or its successors, which shall continue as the depository, regardless of changes in the ownership of said land, the sum of $80, which shall operate as a rental and cover the privilege of deferring the completion of the well for six months, from said date."

The clause written at the end of the lease reads as follows:

"Second party agrees to commence drilling a well within six months on the block of leases of which this is a part."

In our judgment, the clause written at the end of the lease does not affect the other clause in the lease, and was not intended to affect it. It was written there to satisfy Mr. Beggs, the lessor, that they were intending to commence drilling right away. We are strengthened in this view by what was said by Beggs and Campbell at the time the lease was being written. At the trial, when Beggs was testifying, he was interrogated as to how that clause at the end of the lease came to be written and he replied:

"My recollection in regard to that clause is Mr. Campbell and completed filling out the lease. I says to him something like this. I says I don't want to sign a lease whereby you can hold my land indefinitely for a term of five years just by paying this rental, and he says I will fix that, and he wrote that clause in there himself. That was all that was said about it."

Again Mr. Campbell testified:

"Q. Had you known that this provision in here to complete a well on or before the 23rd day of August was in there at the time you wrote the lease, would you have executed the lease in that form? A. I would have changed the word 'completed' to 'commence', because that is the usual form we use in taking leases. Q. The provision as written, I will ask you whether that represented the agreement as it was actually entered into between you and Beggs and wife at that time? A. It was. Q. Mr. Campbell, do you mean to say that this provision here that you should complete the well on or before the 23rd day of August was the agreement that you actually entered into with Mr. Beggs? A. On that, as I said before, if I had noticed the word 'completed' I would have changed it to 'commence'. The other provisions are just as the understanding was."

And being cross-examined by counsel calling him as a witness, he further emphasized the fact that the lease was correctly written.

"Q. *** Did you agree to drill or complete a well on the Beggs' land by the 23rd day of August, not on the block, but on the Beggs land? A. What I will say is, that we agreed to either commence a well—says 'completed', but I would have changed that to 'commence', or pay him a rental in six months. Q. Did you at any time agree to pay Beggs and wife or either of them $80 as a rental in lieu of the completion of a well on their land within six months from the date of the lease? A. Yes, the rental under the terms would have been a rental due."

It seems to us clear from the foregoing quotations from the testimony that it was the understanding between Beggs and Campbell that the well was to be commenced or completed within six months or rental paid as provided in the contract. It makes very little difference, if any, whether the word "completed" or the word "commenced" was intended, the payment of the

rental on or before the 23rd day of August was a condition precedent to continuing the lease in force. The lease was drawn up by Mr. Campbell, an employe of the plaintiff in error, presumably an expert in drawing leases, on a form of lease that he brought with him. The lessor, Beggs, was a farmer and not skilled in drawing leases, and the well established rule is where one party writes a contract it is to be construed most strongly against the party who wrote the contract, and in favor of the other party. We have read the testimony of both Campbell and Beggs, and we do not think from the testimony of Mr. Campbell that he had in mind or intended that the clause inserted at the end of the lease should have any such effect or construction as is contended for by plaintiff in error. It is our judgment that the "unless" clause in the lease remained in the lease with the same force and effect as if the clause at the end of the lease had never been written. Any other construction, in our judgment, would do violence to the language used, and be an imposition upon the lessors that was not intended by Mr. Campbell, who wrote the lease, and should not be enforced as counsel for plaintiff in error contend. If the construction of plaintiff in error is the proper construction, then the clause at the end of the lease would have to be construed as a trap set by the lessee into which the lessor ignorantly and innocently fell. Where there are two clauses in a contract which are apparently conflicting, the contract should be so construed as to give full force and effect to both clauses, if it can be done; and that is what we have tried to do in this case. There is nothing in the testimony of either Campbell or Beggs which would justify the conclusion that it was their intention to relieve the lessee from the forfeiture clause. But the evidence of both of them in our judgment shows that the rental was to be paid on or before the 23rd day of August, or the lease terminated as to both parties. The case of Frank Oil Company v. Belleview Gas & Oil Company, 29 Okla. 719, 119 Pac. 260, is as much like the case at bar as two cases well could be. That was an unless lease like the one at bar, and there was a failure to pay the rent when due. The court also in that case held that the lease was an unilateral option just as is contended in this case, and this court has consistently followed the Frank Case in a number of other cases which are collated and cited in the opinion of the court on the former appeal of this case, and it is unnecessary for us to cite them again in this opinion as we stand by the opinion on the former appeal in that regard.

This brings us to the other contention of counsel for plaintiff in error, and that is, that defendant intended to pay the rent on or before the 23rd day of August, 1916, but was prevented from doing so by mistake, inadvertence, or ignorance of it semploye in not keeping its records or leases in such a way as it could readily tell when the rental on any lease was due. In view of the facts and circumstances in this case, we are forced to the conclusion that it was not the intention of the lessee to pay the rental on the 23rd day of August because it was drilling the well on the Hoy tract adjoining the Beggs tract, and, according to the geologist, was getting about where the oil sand should be encountered; and that it was simply gambling that the well was going to be a dry one, and that they would save the rental by not paying it. This conclusion is strengthened by the fact that the well was brought in about midnight of August 25, and they commenced wiring before business hours on the morning of the 26th trying to arrange the rental. First, they wired the First National Bank of Medford to deposit $80 to the credit of George Beggs and Abbie N. Beggs, but Beggs had been to the bank on the morning of the 24th to see if the rental had been deposited, and was informed by the officers of the bank that it had not, and they served a written notice on the bank not to receive the money if it was tendered; that they considered the lease terminated and were going to stand on the letter of their contract. So that when the bank received the wire to place the amount of rent to the credit of Beggs, it did not do so, but notified the lessee that Beggs had served notice on it not to receive it. and therefore it could not receive it for his credit. It is fair to presume that defendant knew on the 23rd that this rent was due on that date, or it could not have known it before office hours on the morning of the 26th. We are strengthened in this view by the fact that Miss McCormick who kept the record of the leases, prepared an abstract of the Beggs lease showing the rentals to be due August 23, 1916, and the rental on the other four leases listed with the Beggs lease to be due on August 22nd. The abstract of these five leases was prepared by Miss McCormick and placed on the desk of Mr. Campbell, who had charge of the payment of the rentals, a few days before the 23rd, and his attention called to the fact that these were leases providing for payment of the rental within six months. After they learned that Beggs would not accept the rent they sent one of their employes, Mr. Shallenberger, to see Beggs and try to get

him to accept the rental. Shallenberger went to Beggs' home in Grant county and tried to get him to accept the rental and keep the lease in force. Beggs declined to do this, and told him that he had placed the land in the hands of Mr. Theiss, a real estate broker in Enid, to lease for him; that he was in debt and needed some money, and that he was going to get all he could out of it before he leased it again. Shallenberger offered to furnish him enough money to pay off his indebtedness, but Beggs replied that he thought that he could get more than that out of it, but agreed that he would put the proposition up to Shallenberger before he leased it to anyone else. On the 30th day of August Mr. Theiss notified Beggs that he had an offer of $12,000 bonus and one-eighth royalty for a lease on his land. Mr. Beggs put this proposition up to Mr. Shallenberger and Shallenberger said it was too much money, that the lease was not worth it, and Beggs could take his lease and go to hell with it. This Beggs refused to do, but proceeded to lease the land to Champlin and got his $12,000 bonus. A lease was then drawn up on the evening of the 30th of August from Beggs to Champlin. Beggs had not seen Champlin and did not know him up to that time. and did not know who the land was to be leased to. and the lease was drawn up and Champlin was called over the telephone and came over to Theiss' office and executed the lease on the morning of the 31st of August. Champlin paid Beggs the $12,000 bonus, and a few days thereafter. commenced to drill a well on the land, and has been drilling on said land ever since. We are, therefore, of the opinion, and so hold, that the showing made by the lessee as an excuse for not paying the rental when due is insufficient and does not prevent a termination of the lease as provided in said lease from Beggs to the Chanute Refining Company. The plaintiff in error contends that a partial performance of the contract by drilling on the Hoy lease was sufficient to relieve them from a failure to pay the rent. This argument is based on the theory that the Beggs lease became a part of the block of leases that Garber procured. some 60 in number, and he and the parties from whom he leased entered into a drilling contract, and all of the lessors signed this drilling contract, and also Garber signed it. The Beggs lease was made by Beggs to the Chanute Refining **Company, and was** not a part of the block of leases obtained by Garber. because these leases had all been procured by Garber and a drilling contract entered into before the Chanute Refining Company got the Beggs lease. There is nothing in the record that

would justify the contention that the Beggs lease was a part of the block unless it would be the clause added at the end of the lease, but we think that is insufficient to constitute Beggs' lease a part of the block, but if it did, it would not change our view wherein we have held that the lessee was bound to pay the lease money on or before August 23, 1916, or the lease terminated as to both parties.

Counsel for plaintiff in error have invoked every equitable remedy that they could think of, but in our judgment the facts in this case do not justify us applying any of the remedies suggested to this case. We desire to say that we concur in the opinion heretofore rendered by this court on the former appeal of this case, and we also hold that the findings of fact and conclusions of law of the trial court are amply supported by the testimony in the case and the law of the case, as we construe it. We deem it unnecessary to take up all of the points discussed by counsel in detail. We are of the opinion that the judgment of the trial court is right, and should, in all things, be affirmed.

By the Court: It is so ordered.