## LUCKY THIRTEEN OIL SYNDICATE et al. v. BARRETT et al.

No. 21586.   Opinion Filed May 3, 1932.

Rehearing Denied June 21, 1932.

S. A. Horton, Snyder, Owen & Lybrand, W. H. Woods, and Chas. E. Wells, for plaintiff in error.

I. C. Saunders, A. B. Shuttee, and J. Knox Byrum, for defendant in error.

RILEY, J. The judgment below canceled an oil and gas mining lease drawn and executed and delivered by W. S. Barrett to the Commerce Development Company on September 12, 1929, covering lots 1 and 2, in block 13, Earlsboro, Pottawatomie county, Okla., and assigned, on December 4, 1929, to Harry Byrens, trustee for the Lucky Thirteen Oil Syndicate. The judgment below was based upon a construction of the terms of the lease. It was there held: "That said lease terminated and came to an end according to its terms on the 12th day of March, 1930."

The material portions of the lease contract are:

"Lessee agrees to immediately commence operations for drilling of a well upon this property and continue in diligent manner until well is drilled to Wilcox sand found around 4,200 feet. If this well is not completed to this depth within six months from this date this lease is null and void.

"The term of five years is given so parties could drill to Cromwell sand or plug back the well in event it was dry in Wilcox sand. The drilling of a well is the consideration in this lease.

"It is agreed that this lease shall remain in force for a term of five years from date, and so long thereafter as oil or gas, or either of them, is produced from said land by the lessee. * * *

"If no well be completed on said land on or before the 12th day of March, 1930, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Bank of Commerce at McLoud, Okla., or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $20, which shall operate as rental and cover the privileges of deferring the commencement of a well for 12 months from date. In like manner and upon like payments or tenders, the commencement of a well may be further deferred to periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable, as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

The trial court found "that defendants deposited with the Bank of Commerce at McLoud, Okla., the depository named in said lease, the sum of $20 on the ____ day of February, 1930," but "that said well had not been drilled to the Wilcox sand, nor to the depth of 4,200 feet prior to the 12th day of March, 1930."

It is our view that the "unless" portion of the lease contract modified what may be called the first termination clause, so that upon the payment of rentals the completion of a well was deferred, thus continuing the lease in force and effect.

It is urged by plaintiffs in error that, since Barrett drew the lease, the language of the instrument must be construed strongly against him (Prowant v. Sealey, 77 Okla. 244, 187 P. 235), and that, since rentals were paid before March 12, 1930, there was no abandonment despite the temporary cessation of operations. Rennie v. Red Star Oil Co., 78 Okla. 208, 190 P. 391.

Defendants in error contend that the rule of construction is strongly against lessee, and this in order to promote development. Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 P. 545; Frank Oil Co. v. Belleview G. & O. Co., 29 Okla. 719, 119 P. 260; New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 P. 514; Crain v. Pure Oil Co., 25 Fed. (2nd) 824. And that, as in the case of Johnston v. Shaffer, 74 Okla. 25, 176 P. 901, "Where written portion of an oil and gas lease is at variance with the printed part, the former should control and govern in the construction thereof as best indicative of the intent of the parties."

However, the unless clause of this lease was not without purpose, nor was its existence within the lease contract an oversight, for Barrett, lessor, who drew the lease, testified that he filled in that clause the date, by use of typewriter, just as he had written into the 88 form of lease the above-mentioned termination clause.

It was in view of the provision continuing the life of the lease upon the payment of money in lieu of completion of a well prior to March 12, 1930, that the parties contracted. Thirty-six thousand dollars was spent by the owner of this lease in drilling a well and on February 28, 1930, the well

was down to the depth of about 3,600 feet and on February 26th the contractual amount was tendered to the named depository to defer completion of the well.

Judgment reversed.

LESTER, C. J., and SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. HEFNER and McNEILL, JJ., dissent. CLARK, V. C. J., and CULLISON, J., absent.

---

SWINDALL, J. (concurring). I concur in the opinion delivered by Mr. Justice Riley. However, I desire to express my views more fully than therein expressed upon the facts disclosed by the record.

It is the contention of the defendants in error that the lease is void for the reason that no well was drilled to the Wilcox sand within six months from the date of the lease. I do not agree with the construction placed upon the lease by the defendants in error. If that were the only clause in the lease relating to drilling a well, then the contention of the defendants in error would be sound. However, we must consider all of the terms of the lease together in arriving at the intention of the parties executing the same. Time will not be considered as the essence of the contract unless it is made to appear from the plainly expressed provisions of the contract that such was the intention of the parties. Marshall v. Miller, 104 Okla. 144, 230 P. 494; R. T. Stuart Co. v. Graham, 117 Okla. 117, 245 P. 608; Drumright v. Brown, 76 Okla. 162, 184 P. 110; Willett v. Kesselring, 78 Okla. 199, 189 P. 752; Peters v. Bledsoe, 78 Okla. 256, 190 P. 407; Mitchell v. Probst, 52 Okla. 10, 152 P. 597; Shenners v. Adams, 46 Okla. 368, 148 P. 1023; Wiebener v. Peoples, 44 Okla. 32, 142 P. 1036; Standard Lumber Co. v. Lumber Co., 21 Okla. 617, 96 P. 761; section 5061, C. O. S. 1921.

In addition to providing that the lessee agrees to "immediately commence operation for drilling a well" upon the property covered by the lease and "continuing in a diligent manner until the well is drilled to the Wilcox sand found around 4,200 feet," and providing that "if this well is not completed to that depth within six months from this date this lease is null and void," the lease also provides that the term of five years is given so parties could drill to Cromwell sand or plug back the well in event it was dry in Wilcox sand. Also that "the drilling of a well is the consideration in this lease." It is further provided that, "it is agreed that this lease shall remain in force for the term of five years from date, and so long thereafter as oil or gas, or either of them is produced from said sand by the lessee." It is further provided that, "if no well be completed on said land on or before the 12th day of March, 1930, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit" in the bank designated in the lease "or its successor, the sum of $20, which shall operate as rental and cover the privileges of deferring the commencement of a well for twelve months from date." In like manner and upon like payments or tender the commencement of the well may be further deferred to periods of the same number of months successively. So, in my opinion, under a fair construction of the terms of the lease, time was not of the essence of the contract, but the parties had in mind that a well should be immediately commenced and a test well drilled to the Wilcox sand found around 4,200 feet, within a reasonable time after the date of the lease, but if in drilling to the Wilcox sand a producing sand was found at a lesser depth, that the parties intended that such well should be a consideration for the lease. It certainly could not be seriously contended that if in attempting to complete a well to the Wilcox sand within six months a valuable commercial well should be found at 2,000 feet, the same was not to be saved, but that the lessee should press his operations in order to reach the Wilcox sand within the six months. If such had been the intention of the parties, I see no reason why they should have incorporated the provision in the lease that "the drilling of a well is the consideration of this lease" or providing for the extending of the lease after the six months period upon payment of $20 rental. As said before, it is my opinion that, under a fair construction of all of the terms and provisions of the lease, the lessor intended that a test well should be drilled to the Wilcox sand within a reasonable time after the date of the execution of the lease, and if a well was found in the Cromwell sand or in other sands, the same was to be a consideration for the lease, and, of course, what would be a reasonable time in drilling a test well to the Wilcox sand would depend upon conditions. This is not an action to cancel a lease upon the grounds that a test well was not drilled to the Wilcox sand within a reasonable time, but it is an attempt to cancel the lease for the reason and upon the sole ground that the lessee did not comply with the first clause of the lease requiring that a well be completed to the Wilcox sand

within six months and ignoring all of the other provisions of the lease that tend to shed light upon the intention of the parties. This I do not feel is in accordance with a proper construction of the lease contract, and I am of the opinion that the rule of law announced in the syllabus is correct, and, therefore, concur in the opinion as written, elaborating on my views in this concurring opinion.

---

McNEILL, J. (dissenting). I am unable to concur. I take a different view in this case from that expressed in the majority opinion. It is my opinion that the court is attempting to write and substitute another and different contract than that which was entered into by the lessor and lessee, and thereby render nugatory a condition precedent incorporated in the oil and gas lease in question. The instrument is a drilling contract, incorporated in an oil and gas lease, on form 88, well known to the oil operators in the Mid-Continent Field. The parties to the original lease were W. S. Barrett and wife, lessors, and the Commerce Development Company, lessee. The lease was dated September 12, 1929. On December 3, 1929, the original lessee assigned the lease to Harry Byrnes, trustee, for the Lucky Thirteen Oil Syndicate. At the same time the said syndicate entered into a drilling contract with George N. Davis for the drilling of an oil and gas well on the premises involved. In my opinion, the present lessee is without support in a court of equity. Before the drilling contractor, Mr. Davis, entered into his contract with the syndicate, he discussed the provisions of this lease with Mr. Barrett, the lessor, who informed him that the lease provided that a well should be completed to the Wilcox sand within six months from the date of the lease. Practically all that had been accomplished in the way of development prior to December 4, 1929, was the erection of a rig, which took about the usual three days time, and the digging of a slush pond. Under such conditions the present lessee and said drilling contractor proceeded ostensibly with the expectation that the well could be completed by March 12, 1930, and financed from the proceeds to be obtained from the sale of 100,-000 units as the drilling progressed. Failure in the sale of said units and lack of finances chilled the drilling operations. The well was drilled to a depth of 3,600 feet by February 26, 1930, and due to financial stringencies, through no fault of the lessors, nothing was done by the lessee in completing the well to the Wilcox sand subsequent to February 26, 1930. Liabilities had been created to the extent of about $36,000, a greater portion of which, if not practically all, remained unpaid. It is undisputed that the well was shut down on about February 26, 1930, for lack of fuel, and funds to pay the gas company. In my opinion it is obvious from this record that the present lessee was endeavoring to complete the well to the Wilcox sand by March 12, 1930, and that the failure to proceed after the well was shut down on February 26, 1930, was not due to weather conditions. The apparent difficulty was due to the fact that the present lessee, a stranger to the lease when executed, but who subsequently acquired the rights of the original lessee by assignment, was unable to finance the drilling, and that by reason of this contingency, the lessee has sought to press for a different contract.

An examination of the lease reveals that the real consideration of the lease was the drilling of a well to the Wilcox sand.

The lease recites:

"Agreement, made and entered into this 12th day of September, 1929: * * *

"Witnesseth: · That the lessor, for and in consideration of one and no/100 dollars. cash in hand paid, receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept, and performed, has granted, demised, leased and let * * *

"Lots one and two in block thirteen, in original town of Earlsboro, Okla.

" (Then this part follows, which was inserted in the lease by the lessors) :

"Lessee agrees to immediately commence operations for the drilling of a well upon this property and continue operations in diligent manner until well is drilled to Wilcox sand found around 4.200 feet; if this well is not completed to this depth within six months from this date, this lease is null and void. The term of 5 years is given so parties could drill to Cromwell sand or plug back the well in the event it was dry in Wilcox sand. The drilling of a well is the consideration in this lease."

The clause in reference to the drilling to the Wilcox sand immediately follows the granting clause and precedes any reference to the term clause of five years. It is a clear, positive, and direct condition precedent. If the condition was not performed, to wit, a well completed to the Wilcox sand within six months from the date of the lease, the lease is null and void.

"Precedent conditions must be literally

performed, and even a court of chancery will never vest an estate, when, by reason of a condition precedent, it will not vest in law. It cannot relieve from the consequences of a condition precedent unperformed." 4 Kent. 125.

This is cited and approved as syllabus No. 5 in the case of Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 P. 716, which case, in my opinion, is controlling on the issues involved in the present case.

The condition precedent in the instant case was a covenant and agreement on the part of the lessee to be paid, kept, and performed, the real consideration for the granting of the lease, which was located in one of the well-known oil producing areas of this state. There was no cash bonus as a consideration for the execution of the lease. The lessors desired the exploitation of the premises for oil and gas, and the anticipated royalties from the Wilcox sand were the real consideration which prompted the lessors in making the lease. The express condition precedent was violated, and a violation of the same, in my opinion, warrants a judgment cancelling the lease, as found by the trial judge, who has had many years of experience on the bench, and who has often been called upon to determine the interpretation of provisions of oil and gas leases in one of the greatest oil and gas producing areas in this state. The trial court had all the facts before it, heard the various witnesses and, in the view I take in this matter, in the absence of any saving clause in the lease in question, properly construed the lease and enforced the condition precedent, to wit: that unless the well was drilled to the Wilcox sand within six months from the date of the lease, the lease should be null and void.

It is settled law that the terms of an oil and gas lease are to be construed most strongly against the lessee and in favor of the lessor, and where the language is as much that of the lessee as that of the lessor, the lease will be construed most strongly against the lessee so as to create development. Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 P. 716. It would be introducing a new rule of construction to say that by reason of the typewritten portion in the lease in question, inserted by the lessor, providing for the drilling of a well to the Wilcox sand, the oil and gas lease in question should be construed in its entirety most strongly against the lessor.

The oil and gas lease, known as Form No. 88, is the result of endless litigation and based on numerous decisions of this court construing the terms therein involved. It is clear and apparent that the lessor desired a well to the Wilcox sand within six months from the date of his lease, and to attempt to construe the lease, because he inserted such provisions therein, strongly against him and in favor of the present lessee, who was not a party to the original lease, in my opinion is changing the settled law applicable to oil and gas leases. This court on many occasions has announced that the rule of strict construction in an oil and gas lease applies against the lessee and in favor of the lessor, and not against the lessor and in favor of the lessee as in the case of other leases.

In the case of Eastern Oil Co. v. Smith, 80 Okla. 207, 195 P. 773, which involved the question of payment of rental under an "unless" lease, this court, speaking through Mr. Justice McNeill (Neal E.), a brother of the writer of this dissenting view, said:

"* * * It is well to remember that this court has, in a long line of decisions in construing contracts of this kind and character, announced the following rule:

" 'When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound.' Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 P. 260, 43 L. R. A. (N. S.) 487; * * * Superior Oil & Gas Co. v. Mehlin, 25 Okla. 809, 108 P. 545, 138 Am. St. Rep. 942; Mitchell v. Probst, 52 Okla. 10, 152 P. 597; Bearman v. Dux Oil & Gas Co., 64 Okla. 147, 166 P. 199; Northwestern Oil & Gas Co. v. Branine, 71 Okla. 107, 175 P. 533, 3 A. L. R. 344; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 P. 514."

All extension provisions in an oil and gas lease should be made plain, and if there be an ambiguity therein, the construction must be in favor of the lessor. Concord Oil & Gas Co. v. Thompson, 248 Mich. 230, 226 N. W. 857.

In the concurring opinion, it is stated that "time will not be considered as the essence of the contract unless it is made to appear from the plainly expressed provisions of the contract that such was the intention of the parties." A number of cases are cited in support of that proposition. There is no question but what the law as announced is applicable to those cases. Not one of those cases involved an oil and gas lease and that rule has no application to an oil and gas lease contract such as is involved in the instant case. Where a lease requires the exploration and development to

be done within a specified time, or the payment of rentals to be made within a specific time, or the completion of a well to be done within a specific time, time is the essence of the contract. Curtis v. Harris, 76 Okla. 226, 184 P. 574; Eastern Oil Co. v. Smith, 80 Okla. 207, 195 P. 773; Taylor v. Hamilton, 194 Cal. 768, 230 P. 656; Thomas v. Standard Development Co. (Mont.) 224 P. 870; Garfield Oil Co. v. Champlin, 103 Okla. 209, 229 P. 824; McKinley v. Feagins, 82 Okla. 193, 198 P. 997; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 P. 514.

In the case of Texala Oil & Gas Co. v. Caddo Mineral Lands Co., 152 La. 549, 93 So. 788, in the third paragraph of the syllabus it is said:

"Where an oil and gas lease required the lessee to commence drilling to a certain depth within 60 days, and within one year to drill a well to a deep strata of oil, time was of the essence of the stipulation to drill the deep well and for the development of the property in general."

In the body of the opinion, the court said:

"The royalties, that the lessor hoped to obtain by the successful exploitation of the property for oil and gas, constituted the true consideration for the granting of the lease. We need not go further than to say that the failure to drill the deep well within the time required by the contract, or for that matter the failure to drill it at all, should result in the dissolution of the contract, unless for some valid reason plaintiff was excusable in not drilling it up to the time the assignees of the Homer lease entered upon the leased premises and began operations, or unless defendants are estopped to plead the forfeiture of that instrument.

"Time was of the essence of the stipulation to drill the deep well, and for the development of the property in general. There was something to be done within a fixed time, and the failure to do it, even without putting the lessee or his assignee in default for the breach, affords sufficient ground to dissolve the contract. * * * Notwithstanding this, all that can be said is that the drilling of the deep well was only begun. It was not drilled, as provided by the contract."

In the case of Utility Corporation v. Challacombe, May 21, 1931, 39 S. W. (2d) 175, the Court of Civil Appeals of the State of Texas considered the question of a breach of contract and as to whether time was the essence of such contract. In that case it appears that the oil company agreed to begin drilling a test well within 30 days from the approval of land by a geologist and that a failure to do so constituted a breach in material part of the contract giving the company an option to take leases, and that, by reason of such breach, the landowner could treat the contract as abandoned.

In the opinion the court said:

"It is settled law, that, where the contract is unilateral or in the nature of an option, time is of the essence of the contract, and, in order to secure the benefits, the party holding such option must perform within the time specified therein. * * * Likewise, it is generally held that in oil and gas mining leases and contracts for the drilling of oil or gas wells, time is of the essence of the contract, and failure to comply within the time specified will authorize a forfeiture. This is because of the vagrant and fugitive nature of oil and gas, their liability to wander or to be drawn elsewhere, if not developed, the constant shifting of the field of operation, and the fluctuation in value and the opportunity of the lessee to injure or oppress the lessor by delaying developments. * * *

"In the case at bar, the contract was executory. The sole consideration accruing to the landowner was the development of his land for oil and gas mining purposes. His entire purpose was to secure the drilling of a test well. Time was the essence of the contract. The failure to begin the drilling of the well within the time specified was therefore a breach in a material part. The corporation could not prolong nor extend the time for the beginning of the well by withholding the report of the geologist and failing to call on the landowner for the lease."

The rule announced in the concurring opinion is not applicable to a unilateral contract.

In the instant case it was optional with the lessee as to whether he would drill on the premises involved within the six months period. The language was that if such a well was not drilled to the Wilcox sand within six months from date the lease would be null and void. The lessee had a period of six months to comply with that option. The lessee could not have been required under this contract, by reason of the null and void provision, to drill a well to the Wilcox sand. It was optional with it to comply with these provisions, and such a contract is strictly construed in favor of the lessor and against the lessee.

After a careful review of the record in this case, it is my opinion that the judgment of the trial court should be sustained.